### CARY v. GREGG.

1. If a judgment creditor fail to continue his lien on defendant's property, by suing out executions returnable to successive terms, he cannot complain of another more vigilant creditor, who by an attachment, under circumstances warranting it, may acquire a preference.
2. Where a term is permitted to elapse, between the terms to which an original and alias execution are returnable, the issuance of a *ca. sa.* to the intervening term, will not continue a lien on property, created by the former execution.
3. A plaintiff may sue out an *alias fi. fa.*, without obstructing his right to a *ca. sa.*, during the time the former may be in the hands of the officer.
4. A lien is created on property taken in virtue of an attachment, which the right to replevy cannot impair, if it be not done by giving special bail.

AT the March term, 1830, of Lawrence Circuit Court,
a motion was made by Gregg, the high sheriff of that coun-
ty, for judgment against Cary, as his deputy, for failing to
pay over on demand, one hundred and twenty one dollars,
and fifty and one fourth cents, which had been adjudged

55

at December term, 1827, of the County Court of Lawrence, in favor of D. Wallis against W. Scott, which he alleged had been collected by said Cary, and not applied to the satisfaction of said judgment; on account of which failure, Wallis, at June term, 1829, of said County Court, had ruled him, Gregg, for the amount of said judgment. The motion in the Circuit Court was tried on a case agreed to and submitted by the parties, and which is also signed by the presiding judge; from which it appears "that Gregg, as the sheriff of Lawrence county, at 8 o'clock, A. M., on the 10th March, 1829, received an *alias fi. fa.*, which issued on a judgment obtained by a certain David Wallis, against a certain William P. Scott, on the 17th December, 1827, for $106 debt and damages, and $15 50¼, costs of suit; that said execution afterwards, and before the return thereof, came to Cary, as the deputy of said Gregg, and was by him returned, indorsed 'levied on negro woman named Maria, 10th March, 1828, John Gregg, sheriff, by his deputy, R. B. Cary;' and also with this further indorsement, 'on the 13th April, 1829, the negro levied on by virtue of the within *fi. fa.*, was sold for $301, which said sum is claimed by Mudd, Eckford and McLaughlin, and others respectively, by virtue of orders of sale and writs of execution in their favor, which are herewith returned into Court, to abide the decision of this Court, as to whom the money arising from the sale of said negro belongs, by the law of the land, John Gregg, sheriff, by his deputy, R. B. Cary.' That said David Wallis, by motion against Gregg, as sheriff of said county, recovered a judgment against him for the amount of said judgment of the said Wallis, against said Scott; that a *fi. fa.* issued on said judgment in favor of said Wallis, against said Scott, on the 14th day of January, 1828; one other *fi. fa.* on the 10th day of March, 1829; and a *ca. sa.* on the 7th day of August, 1828, all of which came to the hands of Gregg, as sheriff; but upon which no money was made, or execution had; and that the said negro Maria, was the property of the said Scott, before the rendition of said judgment, in favor of said Wallis against said Scott, but covered by a deed of trust, to a third person. It is further agreed that Cary was a constable of Lawrence county, as well as a deputy of Gregg; and that as constable, at half past seven o'clock, A. M. on the 10th March, 1829, he levied the several attachments upon the said negro Maria, mentioned in his return on the said execution, against the said Scott,

which were issued by a justice of the peace; and upon
which attachments, judgments were afterwards obtained,
and orders of sale issued, greater in amount than the sum
for which the said negro sold.   That the said negro was
not replevied; and that on trial of said motion of said
Wallis, against Gregg, the several executions which issued
on the judgments obtained on said attachments were pro-
duced in Court, and Gregg had notice of them; that they
were laid on the table; and that the plaintiffs in them did
not appear, to contest the right of said Wallis, to the pro-
ceeds of the sale of said negro." Upon the above facts,
the Circuit Court gave judgment for Gregg, the defendant
in error, which was excepted to by Cary, and is here as-
signed as error.

SMITH, for plaintiff in error.   The judgment must have
been the result of the proposition, that Wallis' *alias fi.
fa.* being issued from a Court of record, on the 10th of
March, 1830, at 8 o'clock, A. M., and at the same time
delivered to the sheriff, was a better lien on the negro,
than the attachments and executions from the justice of
the peace, levied by Cary, as constable, half an hour be-
fore; and so he was in default in not paying over the
money first on Wallis' *alias fi. fa.*   A very slight exam-
ination of the lien thus asserted for it, will clearly shew
that it must be postponed, until the satisfaction of the at-
tachments and executions.   The lien of Wallis' first *fi.
fa.* was not kept alive pursuant to the provisions of a late
statute on the subject of executions; for there was a lapse
of the June and December terms, 1828, without the issu-
ance of an *alias.*   It is scarcely necessary to say, that for
this purpose, a *ca. sa.* will serve no better than a *habere
facias, &c.,* neither of these creating any lien on goods.
Then this matter is on the same footing as if Wallis' *alias*
were the first *fi. fa.* on his judgment.   That a *fi. fa.* from
a justice of the peace, levied on goods, is a better lien
than the delivery to the sheriff, of an execution from a
Court of record, before the levy of the *fi. fa.* from a jus-
tice of the peace, is shewn by a statute of our State.[a]   An
attachment issued by, and returnable before a justice of the
peace, levied on personal property, before delivery of a *fi.
fa.* from a Court of record to a sheriff, is also a superior
lien, if an attachment of that sort can at all constitute a lien.
That it can, seems to me a proposition too plain, to labor
the proof of, much less to be disputed.   It is a proceeding

[a]  Pamphlet acts of 1827 --8 page 43.

Cary
v.
Gregg.

*in rem*, which, if not available in procuring the appear-
ance of the defendant and his replevin bond, is a lien on
the property attached; and if a plaintiff obtain a judgment
in his attachment proceeding, a *fi. fa.* does not issue as in
the ordinary case of suit by service of personal process;
but a simple order of sale issues, on which no further fur-
ther levy is ever made.    It is observable that this is not
the case of an attachment returnable before a justice of
the peace, levied after a lien might be created, on some
property of a defendant, by a *fi. fa.* emanating from a
Court of record, being delivered to the sheriff, previously
to the levy of such attachment.    In such a case as that, so
far as I am advised, we have no statute that would help the
attachment; and because of the favorable sanction given to
executions from Courts of record, the attachment would
be overreached by the execution.    What would be the
consequences of establishing a different doctrine from that
for which I am contending?    Why, one very obvious, and
as injurious as obvious consequence, would be, that at any
plausible distance of time, after a plaintiff in an attach-
ment, for a sum less than fifty dollars, had by a regular
proceeding, obtained satisfaction of his debt, a plaintiff in
a Court of record, might issue a *fi. fa.*, and have sold un-
der it, the property which had been sold by virtue of the
attachment, thus disturbing most injuriously, the rights of
property.    In questions of the conflict of liens, the maxim
that there is no fraction of a day, does not apply.    If I
do not mistake, so far has this principle been carried in a
case decided by Lord Mansfield, in Burrow's Reports,
that where a penalty for the same offence was claimed in
several *qui tam* actions, the defendant was allowed to
show in abatement of one, that the other plaintiff, earlier
on the same day, had sued out his process.

If the principles for which I have been contending be
sustainable, where is the evidence of neglect of duty by
Cary as Gregg's deputy?    True, it is said in the judgment,
that it was on account of Cary's "default and negligence"
as such deputy, that Gregg has been compelled to pay to
Wallis, or rather it should have been that he had obtained
a judgment against him, Gregg, for he does not allege or
prove that he has been subjected to any thing more than a
judgment, which may or may not be enforced by Wallis;
but in the evidence as I see it, there is nothing that has a
squinting that way.    True there was no violation of duty
in Cary as constable, levying the attachments and execu-

tions, which are specified in his return as deputy of Gregg; but there would have been, if he had holden his hand. There could be no neglect of duty in his levying the *alias fi. fa.* of Wallis on the same negro; for aught Cary knew, she might be sold for more than was necessary to satisfy the claims then in his hands, subject to the magistrate's jurisdiction; but if he had not thus proceeded, his conduct as Gregg's deputy, would have been open to imputation. Certainly Cary is not to blame for the return which he made on the *alias fi. fa.*, for in this he shewed a cautious and conscientious concern, to have the whole matter legally disposed of. Here the blame begins to present itself, but not at the door of Cary. Gregg, instead of submitting to the Court, the facts contained in the return of his deputy, in the motion against him by Wallis, in an application for a continuance of the motion, or that the rights of the plaintiffs in the attachments and executions might be, as such often are, by mere motion, adjudicated *ex æquo et bono*, lays them on the table, and with a non-resistance, which is very like a constructive, if not actual fraud; and his deputy, or those whose claims were subjects of the jurisdiction of the justice of the peace, permits a judgment to be had against him. I said that Gregg laid the claims on the table; that inference is sanctioned by the fact that they were in Court, and a part of his return to Wallis' *alias fi. fa.* Surely, Cary, when as constable, he was subject to so plain a liability, could not have been instrumental in having the orders of sale, and executions go by the board. It was his interest, and perhaps duty, had he been in Court, to have prevented this. The idea that the plaintiffs were there in person, or by attorney, is negatived by the proof; indeed, they could not in the matter between Gregg and Wallis, have been technically in Court; they were no parties to that motion, and had no notice of it. Then where are we to look for the origin of this difficulty? That and its progress are to be found in the negligent and unwarrantable conduct of Gregg; *volenti non fit injuria*. The loss he has or may sustain, is of his own head, in his own wrong; and he I trust will not be profited by his very singular attempt to establish the converse of the rule, that the principal is answerable for the fault of his agent. His success in this Court will place Cary in the very awkward and unjust dilemma of a double responsibility, where equity subjects him to but one.

In conclusion, I would say, that even if the County

Court had had a full view of all the facts, up to the time of Wallis' motion against Gregg, and gave a wrong judgment against him, this must be put down to the account of his misfortune; and Cary and the plaintiffs, whose executions and orders of sale on the attachments he had as constable, and who had no notice, and were not in Court, should not be injuriously affected by such wrong decision.

Cary
v.
Gregg.

ORMOND, for the defendant in error. The defendant in error submits, that the plaintiff cannot succeed, because 1st. the attachment was not sued out against an absconding debtor, therefore the levy did not create a lien in favor of the attaching creditors, but was merely a mode of compelling an appearance, which the defendant in attachment might have discharged, by entering special bail; whereas, the delivery of the execution to the sheriff, created a perfect lien upon the property.

2nd. Because the defendant in error, as high sheriff, was compelled by the judgment of the County Court of Lawrence county, to pay the money in question, for the default of the plaintiff, as his deputy; and the deputy by his return, made upon the writ of *fi. fa.*, submitted the whole matter to the decision of the County Court, and furnished the evidence by which the Court judicially determined the matter, left to them by the return of the deputy, which judgment against the high sheriff, is in full force and unreversed.

3d. Because although it is denied that the high sheriff had any notice of the attachments, further than appears by the return of the deputy sheriff; yet it is conceived that the plaintiff cannot raise that question, as he has no interest in the matter; the judgment of the County Court is certainly a protection to him, and no one is aggrieved, or has any cause for complaint, but the plaintiffs in the attachment cases; even on the supposition that the high sheriff had notice of the attachment cases, and that the judgment of the County Court against him is wrong.

4th. Even if all the preceeding suggestions are wrong, it is conceived that the "Act relative to the satisfaction of executions,"*a* is decisive of the question. That act was made to regulate contests between different judgment creditors, and even if the word execution in the act, be construed to mean a *fi. fa.* only, yet it is supposed that as Wallis, the plaintiff below, sued out first a *fi. fa.*, then a *ca. sa.*, and lastly a *fi. fa.*; and as there was no lapse of a

*a* Acts of 1827
--8, page 23.

term, that even against a conflicting execution of a younger JANUARY 1831 judgment, he would be within the equity, if not within the very letter of the statute, and that in the absence of any such statute, the principle for which I am contending is unquestionable, even in a conflict between judgment creditors. What reason then is there for stretching the statute, to meet a case not within its letter. On the one hand is a creditor, who has sought to recover his money, by the usual and ordinary mode, and who has issued three executions to enforce the judgment thus obtained; and on the other, an attaching creditor who claims priority of a creditor who had used this extraordinary diligence, because he levied his attachment about twenty minutes sooner than the execution came to the hands of the sheriff.

Cary
v.
Gregg.

SMITH, in reply. On the first branch of the above argument for affirmance, I have to say in reply, that there is no authority for saying that the attachments were not sued out against an absconding debtor; the record leaves that doubtful. If it were allowable to indulge in assertion, I could state the fact, that the attachments were against an absconding debtor. But whether against an absconding debtor or not, cannot be important, if an attachment constitute a lien at all. Even in the case put, of its not being against an absconding debtor, and attachments are by far the most frequent for that cause, but merely to compel an appearance, if that and bail were not entered, the Court would, if plaintiff obtained judgment, simply order a sale of the property, without any further levy, or issuing of a *fi. fa.* This shews that the lien must begin with the levying of the attachment. Any attachment of property may be discharged by giving a suitable bond, and filing an appearance, but until that is done, the attachment levied before the delivery of a *fi. fa.* must be preferred to it.

As to the second proposition, I have also somewhat to offer. It is said that the defendant, as high sheriff, was compelled by judgment of the County Court, to pay the money in question, for default of the plaintiff, as his deputy, &c. See argument. When the deputy returned Wallis' *fi. fa.* and exhibited the executions and orders of sale from the justice of the peace, which was laid on the table by Gregg, as I may fairly presume; and was so anxious to have the whole matter properly adjudicated, it is quite too hard to impute negligence to the deputy. Nor will this silence the demands of the execution and order

of sale, if they be of right. I must reiterate that the plaintiff ought not to be pinned down to a wrong decision of the County Court, especially if made on a presentation of facts, garbled by the defendant himself. The County Court, in rendering judgment against the defendant at the suit of Wallis, never took into consideration the *fi. fa's.* and orders of sale from the justice of the peace. If they had, perhaps it is not going too far to say, that the judgment would not have been what it was. If I understand the third proposition in the argument, I fear that it will not lull the executions and order of sale men. They it seems to me have rights that have been improperly adjudicated against them, without giving them any notice or day in Court; and if they should be so uncivil as not to be thus pursuaded to be quiet, this argument to my client is rather a doubtful, if not totally unproductive indemnity.

4th. I conceive that the statute of 1827–8, affords the defendant very little if any aid. If I recollect the provisions of that statute, they are in reference to judgment and execution creditors; and in some instances, a preference to a junior *fi. fa.* from a justice of the peace levied, over an older *fi. fa.*, delivered to a sheriff before the levying of the *fi. fa.* from the justice of the peace. The law that this statute was made to remedy, had that inconvenience in it which I have been deprecating. For however superior might have been the actual diligence of the creditor issuing, and having levied a *fi. fa.* from a justice of the peace, all the benefit that he might have expected, was taken away from him by a creditor, issuing just before him, an execution from a Court of record, and asserting a mere technical advantage. But I am persuaded that in the case under consideration, the *fi. fa.* and attachment creditors have on their side of the question, not only superior actual diligence, but that legal advantage which the law alone recognises as diligence. Nor do I think the Court can listen favorably to the suggestion of defendant's counsel, to frown on the attempt of the attachment creditors to recover their debts because they were driven to such a remedy. Though it may be an extraordinary one, because of the convenience and necessity of it, it is not more nicely scanned than any other form of remedy. It is to be literally and equitably expounded. Defendant's counsel says there was no lapse of a term. Even though I should be wrong in the opinion that a *ca. sa.* is no lien on property, which is hardly possible, still the bill of exceptions shews

that there were no *fi. fa's.* issued at the June and December terms, 1828, which I take to be a lapse of two terms, under the statute. Should the attachment and *fi. fa.* creditors have had senior executions and junior judgments from a Court of record, and Wallis had delivered to the sheriff on a senior judgment, his junior *fi. fa.* with lien kept alive by issuing *fi. fas.* from term to term, before a sale of the property, then he might under the statute referred to, have been entitled to a preference. But the lien of those who had proceeded before the justice of the peace was, if it ever could be, perfected before Wallis had done any thing that had a semblance to a lien.

By JUDGE SAFFOLD. The assignment of error presents the question, whether the issuance of the two *fi. fa's.*, and the intervening *ca. sa.*, on the prior judgment of the Court of record, returnable to successive terms of the County Court, when the latter *fi. fa.* was received by the sheriff, after the property had been levied on by virtue of the attachments, and was then levied on the same property, created a lien on the property, in favor of the first judgment creditor, which will prevail over that created by the attachments, and the proceedings thereon.

The statute of 1807,[a] provides "that no writ of *fieri facias*, or other writ of execution, shall bind the property of the goods against which such writ is sued forth, but from the time that such writ shall be delivered to the sheriff," &c. It is to be observed, the language of this statute is applied to such executions as bind the property of the goods against which they may be issued; and is inappropriate to the nature of a *capias ad satisfaciendum*, which according to the principles of the common law, could give the officer no authority to seize property. Nor does the statute vary the effect of the *ca. sa.* unless where a debtor who has been arrested under it, may choose to tender property in discharge of his body.[b] In that event the officer may receive and sell property, as if taken under a *fi. fa.* But unless there be such voluntary surrender, there is no authority to the officer holding the *ca. sa.* to intermeddle with the property, however abundant it may be.

a Laws of Ala. 294.

b Laws of Ala. 297.

Another part of the same statute has also some influence on this question. It directs "that when any execution shall issue, and the party at whose suit the same is issued, shall afterwards desire to take out another execution, at

JANUARY 1831

Cary
v.
Gregg.

a Laws of Ala 293.

his own proper costs and charges, the clerk may issue the same, if the first writ be not returned and executed."[a] It also allows judgment creditors to resort alternately to the writs of *fi. fa.*, *ca. sa.* and *elegit*, on the unproductive return of either. But what is considered most material, is that the clause last quoted, authorizes the plaintiff in judgment to sue out a *fi. fa.*, and afterwards a *ca. sa.*, or *vice versa*, on the same judgment, directed to the same, or different counties, and without waiting for the return of the former, on paying the costs of the latter. By the exercise of this privilege, he has the means of creating or continuing his lien on the defendant's property, if he deems it necessary; and at the same time can avail himself of any benefit derivable from a *ca. sa.* As judgment creditors have this legal advantage, if they fail to avail themselves of it, they cannot complain of other more vigilant creditors, who by means of attachments, under circumstances warranting them, should acquire a preference.

If the act of January, 1828, relative to the satisfaction of executions, have any influence on the question, it must be to sustain the doctrine advanced, as it increases the facility of continuing the lien on judgments, or explains the previous law to the same effect: so that it is only necessary for that purpose, after placing the original *fi. fa.* in the hands of the proper officer, if it be not satisfied, to sue out an *alias* to the next term, and continue to renew the same from term to term. But it is expressly provided, "that if a term shall elapse, after the return of the first execution, before an *alias* shall be sued out, and delivered to the sheriff, the lien created by the first writ of execution, shall be cancelled and of no avail." Here a term was permitted to elapse between Wallis' original and *alias fi. fa.* It is true he sued out his *ca sa.* to the intervening term, but it had not the effect of supplying the chasm in the lien; for though a *ca. sa.* or *elegit*, falls equally within the definition of the term "execution," used in the statute referred to, yet the former is not an execution which may be issued against goods, &c., as contemplated by the statute first quoted; nor is there any necessity for giving the statutes a strained construction to embrace it, as we think a plaintiff may sue out an *alias fi. fa.*, without obstructing his right to a *ca. sa.*, during the time the former may be in the hands of the sheriff, or other officer.

It then only remains to be considered, whether the attachments created a lien on the property, from the time of the levy? On the part of the defendant in error, it i:

contended that as the attachments were not against the defendant therein, as an absconding debtor, the levy did not create a lien in favor of the attaching creditors; but that it was merely a different mode of compelling an appearance, which the defendant might have discharged by entering special bail; whereas, the delivery of the execution to the sheriff, created a perfect lien on the property. On the opposite side, it is insisted, and found to be true, that the record does not shew whether the attachments issued as against an absconding debtor, or otherwise; also this is contended to be immaterial, in as much as the property was not replevied. The statute,[a] after authorizing under proper circumstances, the issuance of either a judicial attachment, or an *alias* or *pluries capias*, at the election of the plaintiff, provides that goods which may be attached under the former, if not replevied or sold, according to the rules therein after prescribed, for goods taken on original attachments, shall remain in the custody of the sheriff until final judgment: and then be disposed of in the same manner as goods taken by execution on a writ of *fieri facias*. The same statute, after treating of original attachments, and directing the manner of executing them, declares that after an attachment shall have been levied, whether in the case of an absconding debtor or otherwise, "the goods, money, or effects so attached, shall remain in the officer's power, and be by him secured, in order to answer and abide the judgment of the Court in that case, unless the garnishee will give security for the same." Admitting that by another part of the same, and a subsequent statute, any person against whose estate, any attachment has issued, upon giving special bail, may replevy the estate, except in case of absconding debtors, where the security in the replevin bond shall be required to return the specific property attached, or pay and satisfy the judgment; yet the right to reply cannot impair the lien created by the levy, if it be not done by giving special bail. That a lien is created in favor of attaching creditors, I think is sufficiently shewn by the statutes referred to. In this case the attachments were levied before the execution came to the hands of the sheriff, and the execution, for the reasons given, could have no other effect than belongs to an original *fieri facias*. We are therefore unanimous in the opinion, that the judgment must be reversed.

JANUARY 1831

Cary
v.
Gregg.

[a] Laws of Ala 12.

Judgment reversed.

JUDGE WHITE, not sitting.