## POND v. GRIFFIN.

1. A *fieri facias* only binds the goods and chattels of the defendant in the particular county to which it issued.

2. The lien of an attachment commences from its levy, and cannot be divested by a writ of *fieri facias* subsequently levied on the same chattels, if the writ had no binding effect before the levy of the attachment.

Writ of error to the Circuit Court of Coosa County.

THIS was a proceeding against the sheriff of Talladega county, on a suggestion that by the use of proper diligence, he could have made the money on an execution, in favor of the plaintiff against one Johns, which the sheriff had returned " no property." An issue was made between the parties and a verdict returned for the defendant, on which judgment was entered.

At the trial the plaintiff showed in evidence his execution, which was placed in the hands of the defendant, as sheriff, on the 6th day of May, 1839. His judgment was founded on proceedings commenced by attachment, which was levied by one Blythe, then being the sheriff of Talladega county, on the 29th day of January, 1839, on three slaves, as the property of Johns; this attachment was returned, "levy discharged." It appeared that two executions in favor of the plaintiff, against Johns, had been placed in the hands of the sheriff of Coosa county, in September, 1838; these were returned, "no property," and alias executions were issued, and again placed in the hands of the sheriff of Coosa county on the 31st day of December, 1838, and levied on lands as the property of Johns, on the 20th January, 1839. No further proceedings were had on these executions, and they were not returned. Other executions were issued on the 29th day of January, 1839, and placed in the hands of the defendant, who levied them on the same slaves, previously attached at the suit of the plaintiff. These slaves were sold and the money applied to the discharge of the senior executions; the plaintiff procured an execution to be issued on his judgment, and placed it in the hands of the defendant, on the *6th day of May*, 1839, this being the day on which the slaves were sold, but previous to the suit. The defendant was informed of the previous levy by Blythe, under the attachment. Several instructions were requested by the defendant, to be given to the jury and referred by the court, but the only one relied on to reverse the judgment of the circuit court, is this: the court was requested to instruct the jury that the executions which were received by the defendant after the levy of the attachment, did not create a prior lien on the slaves attached; that the lien created by the attachment was prior; and the sheriff should have applied the proceeds of the slaves to the plaintiffs execution. These instructions were refused, and the jury was charged, that the executions received by the sheriff of Coosa being senior in point of time to the levy of the attachment in Talladega county, they created a lien on the slaves, which was not divested by the

levy of the attachment; and as the slaves were sold under the executions, issued on the 29th January, 1839, on the same judgments, though these executions were received by the sheriff of Talladega county, *after* the levy of the attachment, they were notwithstanding, entitled to the money.

This charge, and the refusal to charge, is the only error noticed in the opinion of the court.

DARGAN, for the plaintiff in error, argued that the lien created by an execution in the hands of a sheriff of one county, does not extend to chattels in other counties. He also explained that the contest in the circuit court was, as to the question of law alone; the supposed return to the attachment of the levy having been discharged, having been sufficiently examined there. He cited Lambert v. Paulding, (18 Johnson, 311.)

No counsel appeared for the defendant in error.

GOLDTHWAITE, J.—It is certain that at common law, the goods and chattels of the judgment debtor were bound from the award of the execution, but it is not so clear whether the award spoken of, refers to the date, or the issuance of the court. In an anonymous case reported in Cro. Jas. 470, it is said goods are bound for the *amount* of the execution. In the case of Bencher v. Wiseman, ib. 440, the execution is said binds from *its date.* It is certain, however, that at common law the plaintiff might have several executions to different counties; (10 Vern. ab. 558; Dyer 161, b. pl. 51,) but we do not find any adjudged case as to the extent of the lien over more counties than one.

In England when all the judgments of the Kingdom, are enrolled in the three courts of King's bench, common pleas or exchequer, there was good reason for the rule which bound the lands from the term at which the judgment was rendered, because every one could, with convenience, have access to the public records, but even these, the same rule has never applied to goods and chattels. If, however, these are bound in one county, when the execution is awarded to another, it is evident that there is no

sufficient reason for the adoption of a different rule than that which applies to lands; and yet it is clear that a different rule has long been acted on. We may not be able now to ascertain, when this distinction first obtained; but it is more than probable, that its origin is to be found at an early period, after the commerce of the Kingdom had become of importance to the public. It was probably then seen, that many and great evils would arise, if goods and chattels, could be affected by the strict rules applicable to real estate. The one description of property is fixed and permanent, and can only pass by the most solemn assurances; the other is transitory, easily removed, and may be transferred by mere delivery. All the reasons which caused the courts to exempt personal estate from the lien of the judgment, apply with equal force, against a lien in any other county than the one to which the execution is issued. As commerce advanced and extended its benefits, even the rule of the common law was found to be too inconvenient, and was abolished by the statute of 29th, Charles 2d, c. 3d, sec. 16. That statute is slightly different from the one in force in this State, and is as follows: "That no writ of *fieri facias*, or other writ of execution, shall bind the property of goods against whom such writ of execution is sued forth, and from the time such writ shall be delivered to the sheriff, under-sheriff or coroners, to be executed; and for the better manifestation of the time, the sheriff, under-sheriff, and coroners, their deputies and agents, shall upon the receipt of any such writ (without any fee for the same) indorse upon the back thereof the day of the month or year, whenever he or they receive the same." The difference between this statute and our own is that the pronoun *which* is substituted for *whom*, thus more satisfactorily evincing that the goods and chattels against *which* the execution is issued are alone bound for the writ. (Aikin's Dig. 165, sec. 36.)

The writ of *fieri facias* commands the sheriff to cause to be made, of the defendants goods and chattels, *within the particu-'ar county*, the sum ascertained by the judgment. Now it is plain, if the writ only binds the goods and chattels, against

which the writ is sued forth, it can have no effect to bind goods and chattels which are in another county, and therefore not subject to the operation of the *fieri facias*. When we consider the evil intended to be remedied by the statute, this conviction is strengthened. If the lien created by *issuing the execution*, was found to be too onerous, how much more would one be, which defeated a *bona fide* purchaser, or a diligent and watchful creditor, by creating a lien, which could only be ascertained not to exist, after searching the records of near one hundred courts. It must not be forgotten, that the creditor has the right to issue as many executions, as there are different counties in the State. This being the case, there is no hardship in giving a preference to the *bona fide* purchaser, or vigilant creditor, who may have purchased or seized the goods of a debtor, against whom an execution may have issued in another county. This question has been decided in Kentucky, on a statute precisely similar to our own, when the court of appeals held, that an execution in the hands of an officer, gives a lien upon the goods and chattels of the defendant within the county, which is not lost by their temporary removal. But those to which, not being in the county, no lien attached, if sold *bona fide*, and brought within the county by the purchaser, do not become liable. (Clagget v. Foree, 1 Dana 428.)

We arrive, therefore, at the conclusion, that the execution under which the slaves were sold, attached as a lien only from the time when they came into the hands of the sheriff of Talladega county; and that the lien created by delivering the former execution to the sheriff of Coosa county, could only attach to personal estate, within the county.

2. It now becomes necessary to ascertain whether the attachment created such a lien, as made the sheriff liable for omitting to apply the money to the execution placed in his hands, before the sale of the slaves, and founded on the judgment obtained in the attachment suit. In the case of McRae v. McLean, (3 Porter 138) it was determined that an attachment created a lien in favor of the attaching creditor which cannot be divested by

Pond v. Griffin.

the replevying of the property; and that when attached, it was in custody of the law, to abide the judgment of the court in the particular case. The ninth section of the act of 1837, (P. P. 64,) provides that the execution shall be issued in such a case in the usual manner, and shall be first levied on the property attached, if to be had, and then upon any other property of the defendant.

The attachment having been levied on the slaves, created a lien which could not be divested by the executions subsequently placed in the hands of the sheriff, although on the same day. From this it results, that the instructions given to the jury were erroneous, and the judgment must be reversed, and the cause remanded.

We have omitted to notice the striking fact which is stated in the bill of exceptions, which is, that the levy on the attachment is stated on its return to have been discharged. We presume this must have been satisfactorily explained in the court below, otherwise, the case could never have assumed the aspect in which it is now presented. No question seems to have arisen in the circuit court, on this return, which the parties deemed important to present before this court, and therefore, we have not considered its effect in this case.