## BRANCH BANK AT MONTGOMERY v. BROUGHTON AND DUPREY.

1. Where a plaintiff suffers a term to elapse betwen the return of his first execution, and the issuance, and delivery to the sheriff of an alias, the lien of the first is lost and a junior execution issued and delivered to the sheriff, before the alias is sued out, acquires a superior lien.
2. Although, when property is levied on under an execution and bond is given to try the right, it is in the custody of the law, and not subject to the levy of other executions, which have not a superior lien, this does not

affect the lien of those executions, that have been regularly renewed, on the surplus that remains from the sale of the property, after discharging the older execution. In such a case, the lien is suspended, not lost.

3. If a plaintiff in execution, after it has been levied on property of the defendant, instructs the sheriff to stay further proceedings thereon, this in law is constructively fraudulent as against junior judgment creditors, whatever the motive may have been which induced the instruction, and its lien will be postponed in favor of other executions that have issued and been delivered to the sheriff, before the plaintiff sues out an alias.

Error to the Circuit Court of Barbour. Before the Hon. J. D. Phelan.

This was a motion to the court for an application of a sum of money in the sheriff's hands, raised by the sale of a slave, as the property of John P. Booth, against whom the plaintiff, and each of the defendants in error, had obtained judgments and executions. By the record it appears that the facts were agreed on, and are as follows:

1. An execution in favor of Broughton was issued and delivered to the sheriff, on the 24th April, 1847, and an alias on the 21st October, 1847. The first of these was returnable to October term, 1847, and the other to April term, 1848, of the circuit court of Barbour.

2. An execution in favor of Duprey was issued and delivered to the sheriff on the 26th April, 1847, and an alias on the 25th October, 1847. These executions were returnable to the same court that B's were.

3. An execution in favor of the bank was issued and delivered to the sheriff on the 30th September, 1846, and levied on said slave on the 5th October, 1846, and on the 29th of the same month, a few days before the return day of the execution, the plaintiff instructed the sheriff to stay further proceedings thereon. This instruction was given, because another execution in favor of the bank, having a superior lien had been levied on the same slave, a claim interposed, and bond given to try the right of property. An alias was issued and delivered to the sheriff on the 22d September, 1847, as soon as practicable after the trial of the claim case, and the condemnation of the property therein, and a pluries on the 14th December, 1847. These executions issued from the

circuit court of Montgomery, the terms of which are held in May and November. The money in controversy was a surplus, that remained after discharging the bank execution, under which the property had been condemned and sold.

On this state of facts, the court ordered the money to be applied to the executions in the order in which they stand in the above statement, to which the bank excepted, and which it now assigns as error.

COCHRAN and SAYRE, for plaintiff in error.
BUFORD, for defendants.

CHILTON, J.—We think there can be but little doubt as to the correctness of the decision of the court below upon the facts presented. The statute declares "that the lien created by the delivery of an execution from a court of record to the sheriff, shall continue to bind the property of the defendant as between different judgment creditors in the courts of record in this State, in the following manner, viz : If a term shall elapse after the return of the first execution, before an *alias* shall be sued out and delivered to the sheriff, the lien created by the delivery of the first execution shall be canceled, and of no avail; but if a term shall not have elapsed, and the *alias* shall be delivered to the sheriff before the sale of the property under a junior execution in favor of another creditor, the lien shall continue, notwithstanding such *alias* may not have been delivered until after such junior execution; but if such *alias* shall not be delivered until after the sale under such junior execution, the lien of the latter will prevail." Clay's Dig. 209, § 43. Now, the property of the goods of the defendant being bound only from the time the writ of execution is delivered to the sheriff, (Clay's Dig. 208, § 41,) and there having been the lapse of a term between the issuance of the first execution of the bank, which was the 30th September, 1846, and the issuance of the second, the 27th September, 1847; and the executions of Broughton & Duprey having been delivered to the sheriff in April, 1847, it would seem to follow, from the language of the statute, that the lien of the latter executions is superior to that of the bank. McBroom & Turner v. Rives, 1 Stew. Rep. 72; Carey v.

Gregg, 3 Stew. Rep. 433 ; Mills v. Williams, 2 S. & P. 390; Collingsworth v. Horn, 4 Stew. & Porter, 237.

Let us proceed to inquire whether the levy, and peculiar situation of the property, may, notwithstanding this chasm, preserve the lien. It appears that after the sheriff had levied upon the slave, the proceeds of the sale of which are now in controversy, and had indorsed the said levy upon the first bank execution, he was instructed by the bank to stay further proceedings under said *fi. fa.* This instruction was given a short time previous to the return day; and the reason for giving such instruction is stated in the record to be, that a claim had been interposed, and bond given upon a levy made under another *fi. fa.* of the bank on the same slave. It is insisted by the attorney for the bank, that this levy gave a prior right of satisfaction which was not affected by the instructions, inasmuch as the right to the slave levied upon was then being tried under a levy made upon said slave, under another execution upon a different judgment in favor of the bank.

It has been several times decided by this court, that property levied upon, and for which a claim has been interposed under the statute, and a bond given to try the right, pending said claim, is in the custody of the law, and not subject to be levied upon by other executions not having a prior lien. McRea & Augustin v. McLean, 3 Porter's Rep. 138 ; Pond v. Griffin, 1 Ala. Rep. 678 ; Rives & Owen v. Wilborne, 6 Ala. Rep. 45, 48. But it does not follow, that because the property is considered in the custody of the law, and consequently not liable to seizure upon a levy, that the lien of executions which would be entitled to the surplus which may remain after satisfying the execution under which it was condemned, is lost or destroyed. The lien in such case, if executions are regularly kept up, is suspended, not lost. Langdon v. Brumby, 7 Ala. Rep. 52. The property of the defendant in the execution is not the less his, because a false or unfounded claim has been asserted to it by a third party. Upon a sale of it by the sheriff, the proceeds will be applied to the satisfaction of the oldest liens, and the *fi. fa.* under which it is condemned, may be postponed to an older *fi. fa.*, regularly kept up from term to term. 7 Ala. 52, *supra.* We think it

would be an erroneous construction of the statutes which authorize the replevy of property under attachments, or the trial of the right thereto, to hold, that proceedings under them should have the effect to interfere with the liens of creditors. Such was not the intention of the framers of these laws, and we can readily perceive how the most mischievous consequences would result from such construction. The right to levy and sell is the means which the law affords for rendering the lien effectual, and the suspension of this right by the act of a third party, over which the creditor had no control, ought not—cannot destroy his lien.

Has the execution of the bank lost its priority from the order given by the plaintiff to stay all further proceedings under the execution? This question was so elaborately investigated in the case of Wood v. Garey, 5 Ala. Rep. 43, that it would be useless again to review the authorities there collated and commented upon. In that case, a majority of the court hold, that to render an execution dormant, or in other words fraudulent, there must be some act of the plaintiff inconsistent with the pursuit of the defendant by execution to obtain satisfaction of the judgment. That the mere delay of the plaintiff in not compelling the sheriff to levy and sell, will not raise the presumption of fraud; but to produce this result, there must be instructions from the plaintiff to delay the seizure, or to let the executions sleep in the sheriff's hands. In the case from which I have quoted, the party whose execution was sought to be postponed had ordered it to be returned a few days before the return day, and the court held this did not work a forfeiture of the lien, and could not be constructively fraudulent. In this case, the plaintiff ordered the sheriff to stop proceedings under his execution, and did not issue another *fi. fa.* until near a year afterwards.

If the instruction of the plaintiff to stop further proceedings, after the sheriff had made a levy, is in law constructively fraudulent as against junior judgment creditors, the motive which prompted the instruction is unimportant as affecting the result.. If the act in judgment of law be *per se* fraudulent, the motive, however innocent or benevolent, is not the subject of inquiry. Now, in the case above referred to, it is stated as the clear result of the adjudged cases, that

if the creditor place his execution in the sheriff's hands, with instructions not to levy; or after a levy, to hold it up and not to sell, it will be constructively fraudulent against junior judgment creditors, who will thereby obtain the superior lien.

The case to which we are referred by the counsel for the bank, of Power v. Van Buren, 7 Cow. 560, (if it can be considered as correctly settling the law as to the motive for delay,) is not analagous to the case at bar. In that case, the sheriff levied upon a quantity of hides in the vats undergoing the process of tanning, which could not be taken up and sold without sacrificing most of the labor already bestowed upon them, with the bark used in tanning, and the sale could not have been made with advantage until warm weather in the spring. Under such circumstances, the sheriff was instructed that there need not be a sale until about the first of May, the levy having been made in the previous autumn. The court approved the reason given for delaying the sale, and say the *fi. fa.* did not thereby become dormant. In the case before us, the sale of the slave levied upon is not postponed to await the decision of the court upon the former levy, but all further proceeding under the execution is stopped, so that if the defendant had been possessed of never so much property, or had acquired such property before the return day of the writ, the sheriff could not, without a violation of his instructions, have proceeded. The books abound with authorities to show that such instructions or interference on the part of the plaintiff will postpone the lien to junior executions. See Kempland v. McCauley, Peake, 66; United States v. Conyngham et al. 4 Dallas, 358; Berry v. Smith, 3 Wash. C. C. Rep. 60; J. & B. Knomer v. Barnard et al. 6 Hill's Rep. 377; Keelog v. Griffin, 17 Johns. Rep. 274; Benjamin v. Smith, 4 Wend. Rep. 336; s. c. 12 Wend. Rep. 405; Loverick v. Crowden, 8 B. & C. 132.

The case of Rankin & Shatzell v. Scott, 12 Wheat. Rep. 177, has no application to the case before us. In that case, the controversy was between different purchasers of real estate bound by judgments; the land was sold under the junior judgment, and afterwards a sale was made under the older judgment, and it was held that the last sale under the *statute of Missouri* passed the paramount title. The question here

is not mere delay in proceeding to sell, but the plaintiff has actively interfered and stopped all proceedings under his execution, and under the circumstances, we cannot do otherwise than consider the execution as though it had not existed, and as having no influence upon the lien.

It is further insisted, that although the sheriff had no right to levy upon the property, yet as he did make the levy under the bank execution, this confers a lien, notwithstanding the instruction to stop further proceeding, and the intervening lapse of a term. Now it would seem necessarily to follow, that if the sheriff had a right to seize the property, by virtue of the execution, it must be for the purpose of disposing of it according to the mandate of the writ. The levy properly made, vests a qualified property in chattels in the sheriff, and he is bound by law to dispose of it in satisfaction of the writ, unless he is stopped in the execution of his duty in some of the modes pointed out by law, or by direction from the plaintiff. If, on the other hand, he became a trespasser by the seizure, it was his duty, and we must presume that he discharged it, in the absence of proof to the contrary, to restore the property to the person from whose possession he had taken it. If the levy was legal, it follows the sale has been prevented by the act of the plaintiff, and according to the authority above referred to, postpones the lien. If illegal, no lien could be created by virtue of it, as no authority could exist for a sale of the property after the return day of the execution under it.

Having arrived at the conclusion, that the claim which was interposed did not destroy, or in any way change the liens of the respective executions, (see Langdon & Co. v. Brumby, adm'r, 7 Ala. Rep. 57,) and that a lien attached, although the right to levy and make sale of the property was suspended, and the bank having forfeited the right to priority, as well by a failure to continue the efficacy of the first execution, having permitted a term to elapse, as by the instructions to the sheriff to proceed no further after a levy was made, it follows that the executions of the defendants in error, which came to the sheriff's hands in April, 1847, and were regularly kept up, overreach the lien of the bank. Russell v. Gibbs, 5 Cow. 390. Let the judgment be affirmed.