## LANGDON ET EL. vs. RAIFORD.

1. A constable may levy an execution issued by, and returnable before, a justice of the peace.

2. When an attachment, issued by and returnable before a justice of the peace, is levied by a constable on the defendant's land, and after the rendition of judgment in the suit, an execution issued thereon is levied on the same land in default of personal property, the lien of the judgment creditor relates back to the date of the levy of the attachment.

3. When a motion is made by the plaintiffs in a judgment to have certain moneys in the hands of the sheriff applied to the satisfaction of their judgment, which motion is entertained by the court and decided against them, the matter becomes *res adjudicata*, and the action of the court is conclusive until reversed, or otherwise set aside; and the plaintiffs cannot bring assumpsit against the sheriff for the money.

ERROR to the Circuit Court of Perry county.
Tried before the Hon. John D. Phelan.

Assumpsit by plaintiffs in error against the defendant, who was sheriff of Perry county, " to recover the sum of $99 $\frac{1}{100}$, the surplus arising from the sale of William A. Strong's land under a *venditioni exponas*, issued upon a judgment rendered in the County Court of Perry, in a certain case of attachment, wherein John H. Reid was plaintiff, and said Strong was defendant, being money had and recived by defendant for the use of plaintiffs." The defendant pleaded the general issue; verdict and judgment for him. It appears from the bill of exceptions, that two attachments in favor of the plaintiffs against said Strong were issued by a justice of the peace, for fifty dollars in each case, which were levied by a constable on the 18th December, 1848, on the defendant's land, and judgments were rendered in both cases by the justice in favor of the plaintiffs, on the 2d July, 1849. An attachment in favor of John H. Reid against said Strong, was levied on the same land by the sheriff, on the 21st November, 1848, and after the rendition of judgment, the land was sold under a *venditioni exponas* by the sheriff. After satisfying the judgment of said Reid, the balance of 99 $\frac{1}{100}$ remained in the hands of the sheriff, which he paid to one B. F. Parsons, who had also sued out an attachment against Strong, which was

levied on the same land on the 22d December, 1848, and judgment being afterwards rendered in his favor, a *venditioni exponas* had issued thereon, and was in the sheriff's hands at the time of the sale. The defendant proved that no execution, or any other process had issued on said plaintiffs' judgments, and no step had been taken by them to subject the land, though they had demanded the money from the sheriff. It was also shown, that previous to the institution of this suit, the plaintiffs had made a motion in the Circuit Court against the sheriff, to have the money now sued for applied to the satisfaction of their judgment, which motion the court decided against them. The court charged the jury, that if they believed all the evidence, they must find for the defendant; to which charge plaintiffs excepted.

A. B. MOORE, for plaintiffs in error.

1. The first question that arises in this case, is, can an action of assumpsit be maintained against the defendant, under the facts of this case? To show that it can, see Wilson v. Seargent, 12 Ala. Rep. 778; 17 Mass. 563; Thompson v. Merriman, 15 Ala. Rep. 166; 10 Peters, 156-7; 13 ib. 263; Hitchcock v. Lukens, 8 Porter, 333.

2. The attachment of plaintiff, having been levied on the lands of the defendant prior to the attachment of Parsons, created a prior lien in their favor, and entitled them to the surplus in the hands of Raiford, sheriff, after the payment of Reid's attachment. 3 Stewart, 433; 12 Ala. Rep. 743.

3. When a lien is expressly created by law in favor of a party, there must be some act done by, or some laches, or neglect, on his part, from which a waiver, or abandonment of his lien may be inferred, before it can be said that he has lost his lien. 12 Ala. Rep. 838: 4 S. & Marshall, 579; 1 Howard, 48.

4. That a constable has a right to levy an attachment, may be inferred from a fair construction of the several statutes to be found in Clay's Digest, p. 55, § 5; ib. 358, §1; ib. 359, §§ 4-5; ib. 364, §7. See also Toulmin's Digest, 512, § 15; 15 Ala. Rep. 721.

5. If a constable has a right to levy an attachment on personal property, he may levy it upon lands, as the statute re-

quires the levy to be made in the same manner. Clay's Dig. 60, § 29.

6. The principle of *res adjudicata* does not apply to decisions of courts made in a summary way. 3 Ph. Ev. C. & H.'s Notes, Part 2, 825.

7. In this case there was no adjudication, as the record shows that the court refused to hear the motion.

The action of the court on the motion, unless the case had been heard on its merits, will not bar this suit.

The refusal to hear the motion was equivalent to a demurrer by Raiford, and that sustained by the court, which would not bar this suit. 3 Ph. Ev. C. & H.'s Notes, 2 Part, 835; 1 Blackford, Stephens v. Dunbar, 56.

I. W. Garrott, for defendant.

1. The plaintiffs show in their bill of exceptions, that before the commencement of this suit, they made a motion before the Circuit Court of Perry, to have the same identical money for which this action is brought, applied to the satisfaction of their judgments, which motion that court refused to grant. If plaintiffs have any right to the money, this motion was their remedy, and the court having jurisdiction having decided against them, they are bound by *its* judgment. Denham *et al* v. Harris, 13 Ala. Rep. 465; Thompson v. Merriman, 15 ib. 166.

2 Plaintiff's attachments were levied by a constable upon land, and *a constable cannot levy an attachment;* because,

1st. There is no statute which authorizes such levy.

2d. The statute which prescribes the form of the writ, requires it to be directed to "any sheriff of the State of Alabama." Clay's Digest, 55, § 6; ib. 63, § 38. A constable, therefore, could not execute such writ. In last statute, word "may" means "must." 9 P. 390, 395–6; Gresham v. Leverett, 10 Ala. Rep. 384.

3. Sheriffs are directly empowered to execute attachments and writs of forcible entry and detainer, issued by justices of the peace. Clay's Digest, 359, § 8.

4. Plaintiffs having only judgments before a justice of the peace, have no lien, because the statute expressly provides that judgments before a justice of the peace shall not bind

Langdon et al. v. Raiford.

land. Clay's Digest, 205, § 17. And the only way by which land can be subjected to a judgment of a justice of the peace, is through the Circuit Court, by virtue of the statute found in Clay's Digest, 207, § 31.

5. The defendant sold the land as well under the judgment of Parsons v. Strong, as of Reid v. Strong, and was required by the process in his hands to have said moneys before the court, to satisfy the same. The money, therefore, was in the custody of the law, and could not be sued for in this action. Denham *et al.* v. Harris, 13 Ala. Rep. 465, 468.

6. The plaintiffs obtained their judgments on the 2d July, 1849, but caused no execution to issue thereon, nor did they take any step to subject the land thereto. Reid and Strong obtained judgments at the July Term, 1849, of the County Court of Perry, which by law is held on the 4th Monday of that month. They caused process to issue on their judgments, and had the land sold to satisfy them; and *after* the land was thus sold, and the proceeds in the hands of the sheriff, they (the plaintiffs) are for the first time heard to claim the money. Under such circumstances, if they had any lien by virtue of the levy of their attachment, they have lost it by their own laches. Campbell v. Spence *et al.* 4 Ala. Rep. 543.

7. Although the action of assumpsit lies to recover money which *ex æquo et bono* belongs to another, yet the money must have been received under circumstances which show some *default* on the part of the defendant, from which the law will imply a contract. This action only lies on a contract, either expressed or implied. 17 Ala. Rep. 51; 1 Ch.'s Pl. 98; Ch. on Contracts, 184.

When the sheriff received the money, he took it under the process in favor of Reid & Parsons, and had it for them, having up to that time no notice of the claim of plaintiffs. He, therefore, had no contract or duty to perform to them, in consequence of having received this money. The claim of plaintiffs *after* he thus received the money, cannot raise a promise in their favor. 2 Richardson, S. C. R. 102; 3 U. S. Digest, 435, § 186.

CHILTON, J.—The first question which demands consideration is, whether a constable can levy an attachment is-

sued by and returnable before a justice of the peace. That the constant practice for years has been for such officers to levy attachments of the kind, is undoubtedly true. Indeed, I know of no case where the right has been questioned. But to deduce the right from the several statutes upon the subject, I am free to confess, is a matter of some difficulty.

By the third section of the act of 1807, it was made the duty of the several constables of the respective counties, "to serve all warrants, summonses, executions and other process to them directed by lawful authority," &c. Clay's Dig. 364, § 7. By the fifth section of the act of 1814, the constable is required to "endorse on the back of all process, how he has executed the same;" and by another act, passed the same year, the justices are required "to direct their process to the officer whose duty it is to execute the same." Clay's Dig. 359, §§ 4, 5. The fourteenth section of the statute last referred to, requires that "every warrant, attachment, summons, subpœna or other process, issued by a justice of the peace, shall be returnable to a day certain, giving a reasonable time for attendance," &c. ib. § 6.

By the fifth section of the act of 1833, (Clay's Dig. 55, § 5,) justices of the peace have exclusive jurisdiction over attachments, where the sum sworn to be due does not exceed fifty dollars. By the second and fourth sections of this act, they have power to issue attachments for sums over fifty dollars, but they are made returnable to the Circuit or County Court; and in respect to attachments so returnable, it is clear that the sheriff should execute them. From these several statutes, and several others which seem to point to the same conclusion, we think it may be safely inferred that the legislature intended, that the constable should levy attachments which were exclusively within the justice's jurisdiction. The fact, that by the act of 1829, the constable is allowed a fee of seventy-five cents "for levying an attachment," (Clay's Dig. 240, § 3,) clearly shows that such was the legislative interpretation of the previous acts. But there are other and subsequent statutes which introduce the difficulty. The sixth section of the same act which gives justices exclusive jurisdiction of attachments for sums under fifty dollars, declares that "to prevent errors in issuing attachments, the writ shall be in the

following form: *The State of Alabama. To the sheriff of ——
County, greeting,*" &c. Clay's Dig. 55, § 6. And by the act of
1835, (ib. 63, § 38,) "all original or judicial attachments and
summonses of garnishments are required to be directed, 'To
any sheriff of the State of Alabama'." Again: by the previ-
ous act of 1823, it was made unlawful for the sheriff or coro-
ner to execute process in civil cases, issued by any justice of
the peace, *except attachments,* and by the act of 1826, precepts
in forcible entry and detainer were also excepted. Clay's Dig.
359, § 8. These acts, construed literally, would embrace *all*
attachments, and require them to be executed by the sheriff.
We think, however, upon a careful examination of the sev-
eral statutes, that they were not designed to have so extended
an operation, and that the apparent conflict may perhaps be
reconciled by the fact that attachments issued by justices, *but
returnable to cour.s of record,* must be directed to the sheriff,
&c., and executed by him; and that such attachments only
were in the mind of the legislature, as were so returnable.
In Alford v. Johnson, 9 Porter, 320, it was held, that the act
of 1836, requiring process to be directed "to any sheriff," did
not apply to attachments issued by a justice of the peace.

It is, however, sufficient that taking the whole body of our
statutes together, they leave the right of the constable to levy
in doubt, since we should be unwarranted, unless required by
the most unequivocal expression of the legislative will, in
overturning a practice which has uniformly, so far as we are
advised, obtained in this State, and upon which the title to
much property doubtless depends; a practice too, which
seems to have been sanctioned by our predecessors as early
as 1831, in the case of Carey v. Gregg, 3 Stew. Rep. 433.
That was the case of a motion by a sheriff against his deputy,
for failing to pay over money collected by the latter on exe-
cations placed in his hands from a court of record, which had
been levied by him on a negro slave. The deputy, who was also
a constable, defended upon the ground that attachments and
executions from a justice of the peace had been levied by
him as constable, half an hour before the fi. fa's. from the court
of record came to his hands. The court held, that the at-
tachments, having been levied before the execution came to
the officer's hand, had the prior lien. The right of the con-
34

stable to levy the attachments, though not made a question in the cause, is certainly involved in the decision.

2. The next question is, whether the levy by the constable upon the land of the defendant, created a lien paramount to the lien of Parsons' execution, which was subsequently levied by the sheriff. The act of 1837, (Clay's Dig. 60, § 20,) authorizes all original attachments to be levied on land, and it is well settled that a lien attaches from the date of the levy; inchoate, it is true, but capable of being perfected by the rendition of judgment, and the issue of such process as may render it effectual. If the constable levy the attachment on land, and judgment be thereupon rendered by the justice, such levy can only be made available by the issue and levy of an execution on the same land, in default of personal property of the debtor; in which event, the levy and the proceedings had before the justice, are to be certified to the Circuit Court, and if found regular, an order of sale issues to the sheriff. Clay's Dig. 207, § 31. Upon a sale of such land, we think it very clear that the lien would date, not from the levy of the execution. but would relate back to the levy of the attachment. This proceeding would also furnish record evidence of the levy upon, and sale of the land, which the justice could not order, his not being a court of record. That the lien of the attachment dates from the levy, and is not affected by the levy of an execution which had no lien before the attachment was levied, see Pond v. Griffin, 1 Ala. Rep. 678.

3. But it is argued that the lien, which was commenced by the levy, was never perfected by the Langdons, they having failed, after the rendition of judgment, to issue execution, so as to make a levy and obtain an order of sale, as required by the statute.

The answer to this is, that the land was sold by the sheriff under a *venditioni exponas* issued in a suit commenced by an attachment, which had been levied before the attachment of the Langdons, and consequently they could only proceed for the surplus, after satisfying the older lien, which surplus it appears the sheriff had in court. Whether in such case it would not be incumbent on them to show, by a return of the constable upon an execution, that there was not personal property

of the debtor to satisfy it, as in that event only they could have perfected their lien, had no sale of the land been made by the sheriff, is a question which in the present posture of this cause, we need not decide, because the view we take of the only remaining question in the cause, renders its decision unnecessary.

4. The bill of exceptions shows, that the plaintiffs proved that they had made a motion at a previous term of the Circuit Court of Perry, and before the commencement of this action, to have the same money now sued for by them, applied to the satisfaction of their judgments against the defendant, Strong; but that said motion was refused by the presiding judge. We do not understand from this language, that the judge refused to entertain the motion, but that having heard it, he refused the application of the money as moved for by the plaintiffs. The money moved for was in the custody of the law, brought into court by its officer, in obedience to its mandate, and it has long been the established practice in such cases, for the court—most usually upon the application of the sheriff, but not unfrequently upon the application of a party having a lien upon the fund created by law, all parties interested being duly notified—to order the fund to be paid out according to the priority of the respective liens. See Denham & Waford v. Harris, 13 Ala. Rep. 465, and cases cited; Thompson v. Merriman, 15 ib. 166; Campbell v. Spence, 4 ib. 543.

The court having a right to hear and determine the motion, and having taken jurisdiction and adjudged against it, the plaintiffs, by their bill of exceptions, show that the matter which they seek by this action to re-litigate is *res adjudicata*, and thus justify the court in giving the charge excepted to, namely: that if the jury believe the evidence, they should find for the defendants. If the plaintiffs had a legal lien, the court had, upon their application, jurisdiction to decide upon it, and has decided against them, which decision must conclude them until it is reversed, or otherwise set aside. If they had no lien, then this action falls to the ground.

It results that there was no error in the charge, and that the judgment of the Circuit Court must be affirmed.