ALBERTSON, DOUGLASS & CO. *vs.* GOLDSBY.

[TRIAL OF RIGHT OF PROPERTY IN SLAVES, BETWEEN PLAINTIFFS IN EXECUTION AND JUNIOR MORTGAGEE OF DEFENDANT IN EXECUTION.]

1. *Lien of execution, how lost.*—The lien of an execution, which has been levied on personal property, is lost, as against an intermediate mortgagee, by an order to the sheriff to postpone the sale until after the return term of the execution, and to let the property remain in the possession of the defendant without requiring bond.

2. *Estoppel in pais.*—Conceding that a mortgagee, who, prior to the execution of his mortgage, consented to a postponement of the sale of the property under execution against the mortgagor, is thereby estopped, in a contest with the plaintiff in execution, from saying that the delay is constructively fraudulent as against his mortgage ; yet this does not prevent him from taking advantage of a subsequent postponement without his consent.

3. *Attorney's authority after judgment.*—An attorney's authority does not cease with the rendition of the judgment, but continues for the purpose of controlling the process for its collection; and hence the lien of an execution may be lost, by the attorney's order to the sheriff, without instructions from his client, to postpone the sale of property levied on, and to allow the property to remain in the possession of the defendant in execution.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. ANDREW. B. MOORE.

THE appellants were plaintiffs in execution against Sturdevant & Jones, and levied on certain negroes, as the property of said Jones, to which a claim was interposed by the appellee under a mortgage from said Jones.   The facts disclosed on the trial of the claim suit, as stated in the bill of exceptions, were these :

"The plaintiffs read to the jury their judgment against said Sturdevant & Jones, which was rendered in the circuit court

of Dallas on the 11th November, 1852, for over $8,000, and upon which an execution was issued on the 29th November, 1852, was received by the sheriff of the county on the 1st December following, and was levied by him, on the slaves now in controversy, with others, on the 30th December, 1852; and said execution was read in evidence. The sale of said slaves was postponed by plaintiffs' attorneys, until the 1st May, 1853, or until further orders, as shown by the following letter:

                    " Circuit Court, Dallas County.

'The sheriff will postpone the sale of the property levied on in this case, until the first Monday in May next, and need make no further levy, unless otherwise instructed hereafter. We also approve the levy as made, and waive the taking of a forthcoming bond for the property levied on, and will not hold the sheriff responsible for the forthcoming or delivery of the property at the day of sale, or other time, but will rely upon a delivery by the defendant.

'Selma, December 31, 1852.'     'LAPSLEY & HUNTER,'
                              ' Att'ys for plaintiffs.'

'P. S. The sheriff will also hold the execution, without returning it, till the 1st Monday in May, the day appointed for the sale.'                           "L. & H.'

" On the first Monday in May, 1853, the sale was further postponed, by order of the plaintiffs' attorneys, until the 12th July, 1853; and on that day, a *venditioni exponas* was issued by the clerk, to the said sheriff, and received by him on the same day, and he made this return on the same: ' Sale postponed by plaintiffs' attorneys, to the 1st January, 1854.' A second *vend. ex,* was issued on the 7th November, 1853, and the sheriff made the following return thereon: 'Levied this execution, 8th February, 1854, on the following slaves [naming them] as the property of defendant Jones. Sale postponed to the first Monday in March, 1854, by the plaintiffs' attorneys.' (Signed by the sheriff.) ' The following property was this day claimed by T. B. Goldsby, who gave bond for trial of the right of property at next circuit court, March 6, 1854.' (Signed by the sheriff.) It was further proved, that the slaves levied on under the first execution and the last *vend. ex.*, were the same, and that they were in the possession of

said Jones at the time of each levy. Plaintiffs further proved the value of said slaves at the time the bond for the trial of the right of property was given.

"The claimant, to show title in himself, then introduced a mortgage from said Jones, with the certificate and registry thereof," which was dated 19th January, 1853, and recorded on the 25th January; "and proved, that said mortgage was made in good faith, that the slaves levied on are the identical ones named in the mortgage, and that they were in Dallas county when the mortgage was executed. The plaintiffs then proved, that the object of postponing the sale, under the first execution, was to accommodate said defendant and said T. B. Goldsby, and to benefit the plaintiffs, by getting security for $5,000 of the debt; that the second postponement was ordered, because defendant had secured $5,000 of the debt, and paid $1,500 in money, and plaintiffs' attorney was anxious to collect the money without selling the property. and because defendant gave him assurance that they would soon pay the money; that these were the sole reasons which induced plaintiffs' attorney to postpone the sale, and that this was done without instructions from plaintiffs. The following statement of plaintiffs' attorney was then read in evidence:

'The defendant in execution and T. B. Goldsby applied to me to stay proceedings on the execution, and at their joint solicitation I agreed to do so, on condition that said Goldsby would become surety for defendants, on their debt to plaintiffs, to the amount of $5,000; with the understanding, that the lien of the plaintiffs, under their execution, should be continued. There was no agreement with Goldsby, in express terms, to this effect; but it was distinctly stated by me, as one of the conditions on which I assented to the postponement, and assented to by all parties, so that the lien of the plaintiffs should be continued. This was on the 31st December, 1853, or about that time, but prior to the execution of the mortgage to Goldsby. Goldsby, previous to that time, had had a mortgage on the property, to secure debts owing to him by the defendant; but the mortgage which was executed prior to the judgment, had not then been released, and, as was understood, does not [the word is illegible] on the property. It was agreed, at the time, between Jones and

46

Goldsby, that Jones would execute a new mortgage to Goldsby, which I was requested to prepare, and which I did prepare soon afterwards, and which is the mortgage under which Goldsby now claims. The statement which I made, as to the continuance of the plaintiffs' lien, had express reference to this mortgage which was to be executed.

.      (signed)                  'J. W. LAPSLEY.'

"It was admitted, that the slaves remained in the possession of Jones, from the time of the first postponement of the sale, until the 8th February, 1854; and it was proved, that said Goldsby consented to the first postponement, and to the return of the property to the defendant under the first postponement. This was all the evidence introduced on the trial; and the court charged the jury, that if they believed the evidence, they must find for the claimant."

The plaintiffs excepted to the charge of the court, and they now assign it as error.

WM. M. BYRD, for the appellant:

1. After a levy, the sheriff may make the defendant in execution his bailee, and leave the property levied on in his possession.—Lampton v. Taylor, Litt. Sel. Cas. 277; Lyon, Cobb & Co. v. Stewart, 5 J. J. Mar. 679; Richardson v. Bartley, 2 B. Monroe, 332.

2. But, if this position be untenable, it is insisted that the sheriff, with the consent of the creditor who is attacking the lien of the execution, may make the defendant in execution his bailee, and the creditor cannot afterwards assert a lien, by virtue of an after-executed mortgage on the same property, so as to defeat the lien of the execution.—Leach v. Williams, 8 Ala. 766; Campbell v. Spence, 4 ib. 550.

3. Where property has been once levied on by the sheriff, and left in the hands of the defendant as bailee, and the execution is stayed until or beyond a term of the court from which it issued, a *venditioni exponas* is the proper writ to be afterwards issued.—Quinn v. Wiswall, 7 Ala. 650.

4. A *vend. ex.*, regularly issued, will continue the lien of the original execution as to property levied on under the first execution.—Quinn v. Wiswall, 7 Ala. 650; Locke v. Coleman, 4 Monroe, 316.

5. The stay of an execution by an attorney, without any consideration moving from the defendant to the plaintiff, will not work a forfeiture, nor destroy the lien of the execution, as against a mortgage creditor who had notice of the execution, and consented to the stay, and to the property being returned to the defendant after levy.—Wood v. Garey, 5 Ala. 43.

6. An attorney at law has no authority to waive or destroy a lien of his client. He has no power, as attorney, to bind his client by the stay of an execution.—Holbert v. Montgomery, 5 Dana, 13; Kirk v. Glover, 5 Stew. & P. 340; West v. Ball, 12 Ala. 340; Lockhart v. Wyatt, 10 ib. 231.

CHILTON, MORGAN & CHILTON, contra:

1. By the lapse of an entire term, without an alias fi. fa., the plaintiffs' lien was lost. The lien was not preserved by the vend. ex., which is a part of the fi. fa., is included in it, and determines with it.—Hughes v. Rees, 4 M. & W. 468. The purpose of the vend. ex. is merely to "quicken the sheriff to his duty." It confers no additional power on him, but forces him to sell, after levy.—Comyn's Digest, tit. "Execution," C (8); Clerk v. Withers, 6 Mod. 398; 2 Saund. R. 47, n. 2; 3 Bibb, 345.

2. The writ provided by statute (Code, § 2454), for exposing to sale property seized under levy, is strictly analogous to the vend. ex. at common law, and can, therefore, only be used during the lifetime of the fi. fa., so as to protect the lien of the plaintiff in execution against any which may subsequently attach.

3. In this case, the second vend. ex. was sued out after the lapse of an entire term; hence, the original fi. fa. having expired, there was none of which it formed a part, and to which it was auxiliary. As to junior executions, therefore, and bona fide purchasers from the defendant, the lien was lost.—Code, § 2457.

4. It is true that attorneys cannot prejudice their clients by unauthorized acts; but, if an entire term passes without an alias fi. fa., by such acts, the lien thereby determines, as to third persons. The consequences of such acts are matters to be settled between the attorneys and their clients.

5. Construing the record most strongly against appellant, it does not appear that the claimant consented to more than the first postponement, and not to that except, perhaps, by the inference of the attorneys. Nor does it appear that he was benefited by said postponement; but, on the other hand, that the plaintiffs were largely benefited by the additional security which they received. It would be harsh and unjust, to presume that the postponement was sought by the claimant, with special reference to a subsequent mortgage.

WALKER, J. The attorneys at law of the plaintiffs in execution twice directed a postponement by the sheriff of the sale of personal property levied on, and ordered that the property should remain with the defendant, and that he should not be required to give a delivery bond. Those two postponements extended from December to the next July. Immediately after the expiration of the two periods of delay above named, a *venditioni exponas* issued, and the sheriff was directed to postpone the sale under it for about six months. At the termination of this last delay, a second *venditioni exponas* issued, and the plaintiffs' attorneys ordered the sheriff to delay the sale for nearly two months. We think that the lien resulting from the delivery of the plaintiffs' execution, or from its levy, was lost by the several postponements of the sales under the execution and writs of *venditioni exponas*, by order of the plaintiffs' attorneys.—Patton v. Hayter, Johnson & Co., 15 Ala. 18; Br. Bk. at Montgomery v. Broughton & Duprey, 15 Ala. 132; Wood v. Gary, 5 Ala. 43; Campbell v. Spence, 4 Ala. 551; Leach v. Williams, 8 *ib.* 764; Berry v. Smith, 8 Washington's C. C. R. 60.

The authorities, which are above cited, settle the law in this State, as to the effect of the delays directed by plaintiffs' attorneys, in defeating the liens of the execution, in favor of junior execution creditors. There can be no reason for a discrimination between a junior execution creditor, and one who holds under a mortgage, such as that of the claimant in this case.—Berry v. Smith, *supra*. The lien of the mortgage having attached pending the constructively fraudulent delays, the execution creditor who directed those delays must be postponed for it.

It may be conceded, without affecting the result, that the claimant, by his consent to the first postponement of the sale under the execution, is estopped from saying that such delay is constructively fraudulent. The second order for a forbearance to sell under the execution, and the orders for the postponement of the sale under the two writs of *venditioni exponas*, together with the fact that the delays thus ordered extended through a period of about eight months, during all which time the property was, by special direction, permitted to remain with the defendant in execution, without bond, are abundantly sufficient, of themselves, to defeat the plaintiffs' lien, in favor of the claimant; and to none of these last acts did the claimant's assent extend.

It is contended for the appellants, that an attorney, as such, has no authority to direct the delay of sale, after a levy of his client's execution. It must be conceded that that position is sustained by many authorities, both English and American.—Banks v. Evans, 10 Smedes & Marshall, 58; Doe v. Ingersoll, 11 *ib.* 273; Union Bk. of Tenn. v. Gavan, 10 *ib.* 344; Dunn v. Newman, 7 Howard's Miss. 582; 1 Comyn's Digest, "Attorney," (B. 10.) The decisions are not altogether consistent; and most of them rest upon the idea that an attorney's authority ceases with the rendition of the judgment. In most of the cases, it is conceded that the attorney may receipt for the money due on a judgment; and it has been held, in England, that he might acknowledge satisfaction, although he had received nothing.—Comyn's Digest, *supra;* Wycoff v. Bergen, Coxe's (N. J.) R. 214.

In this State, there is a plain manifestation of the legislative intent, that the authority of the attorney shall continue after the rendition of judgment. The statutes from which that intent is inferred, are those which provide that the sheriff may give notice of the requirement of an indemnifying bond, when the defendant's title to the property levied on is doubtful, to the plaintiff's attorney; that an officer, who has made money upon an execution, shall give notice, within ten days, to the plaintiff, or *his attorney*, if resident in the county; that the *plaintiff, or his attorney*, may make the affidavit on which a garnishment issues after judgment; and that for a failure to pay over money, on demand of the *plaintiff's attorney*, the

sheriff subjects himself to a rule.—Clay's Digest, 210, § 50; Code, §§ 2444, 2451, 2471, 2472, 3602.

The denial of the attorney's authority after the rendition of the judgment, would do violence to the statutes referred to. They evidently contemplate, that the attorney is to exercise a general superintendence over the process issued to enforce the payment of the judgment, which he has obtained for his client. The notification by the sheriff, that a bond of indemnity is required, has the effect of signifying to the party that the levy will be abandoned, unless the indemnity is given. Why permit such a notification to be given to the attorney, if he does not represent the plaintiff, in directing the proceedings under the execution? A similar question might be significantly asked, in reference to each one of the other particulars in which the attorney's authority is recognized by the statutes.

This court, in its previous decisions, has, in effect, asserted the authority of the attorney over the proceedings for the collection of a judgment. In McClure v. Colclough, 5 Ala. 65, it was decided, that the sheriff was protected from liability, for the omission to return an execution at the time appointed by law, by the fact that he acted under the order of the plaintiff's attorney. If the attorney had no authority to stay the sale in this case, it would follow that the sheriff would be liable for the omission to sell. It cannot be held that the sheriff would not be protected by the order of the attorney in this case, without disregarding the decision in McClure v. Colclough, *supra;* for it would be most unreasonable to say, that the attorney has authority to direct the sheriff not to return an execution, but is without authority to delay the sale under an execution. The decision in McClure v. Colclough is, we think, sustained in principle by Walker v. Goodman & Mitchell, 21 Ala. 647, and Crenshaw v. Harrison, 8 Ala. 342. See, also, Kirksey v. Jones, 7 Ala. 622; Hope v. Oswitchee Company, 5 Ala. 629.

Guided by the spirit of our statutes, and the previous decisions of this court, and by what we conceive a sound policy, we conclude, that the attorney's authority does not cease with the rendition of the judgment, but continues for the purpose of directing the proceedings under the process of the court,

for the collection of the judgment. This authority would be subject to revocation by the client, and could not override the control by the plaintiff himself of the proceedings under his judgment.

It results from what we have said, that the charge to the jury, upon the evidence, was properly given; and the judgment of the court below must therefore be affirmed.

Several other questions were argued by the counsel, which are not considered in this opinion, because the view which we have taken of the case is decisive of it.