## ROSENBAUM *vs.* THE STATE.

[INDICTMENT FOR ASSAULT AND BATTERY.]

1. *Admissibility of evidence in extenuation of assault.*—Under an indictment for an assault and battery, the prisoner cannot be allowed to prove what took place between him and the prosecutor at a previous interview in the forenoon of the same day, which is too far removed in point of time from the actual engagement to constitute a part of the *res gestæ.*

2. *Mode of impeaching witness.*—A witness cannot be interrogated about an immaterial matter for the purpose of laying a predicate to impeach or contradict him.

3. *Attorney's authority to make admissions.*—An agreement or admission of counsel, as to the conduct of a trial in court, has the same binding efficacy as if made by the party himself.

4. *Waiver of personal attendance of witness.*—A deposition, taken in a civil suit between the prisoner and the prosecutor, may be read in evidence on the trial of the criminal prosecution, against the prisoner's objection, on proof of an agreement between his attorney and the counsel for the State that it might be read on the trial.

5. *Charge referring to jury the meaning of words used by witnesses.*—A physician having testified, that he made a professional examination of a wound in the prosecutor's hand, but did not "*examine*" another wound in his side, a charge to the jury, instructing them that "they could consider whether the witness, in saying that he did not *examine* the wound in the side, meant that he did not examine it as a physician, or that he did not see or look at it at all," is not erroneous.

6. *Charge authorizing the jury to consider their own general knowledge and experience.* A charge to the jury in a criminal case, instructing them that, "in arriving at a correct verdict, they could consult their general knowledge and their own experience in life," is not erroneous.

7. *Objectionable expression in charge withdrawn or explained.*—The presiding judge, in charging the jury, having characterized certain matters relied on for the defense as "*little matters,*" (as they had been previously characterized by the prisoner's counsel in his argument to the jury,) this furnishes no cause of reversal, when the record shows that, before the jury retired, the judge told them that, in using the expression, "it was far from the intention of the court to characterize them as small or insignificant, or to indicate in what light they were to be considered and weighed by the jury."

8. *Effect of good character as evidence.*—A charge to the jury in a criminal prosecution for a misdemeanor, instructing them "that evidence of good character went only to the question of the defendant's guilt, and, if they found him guilty, should not be regarded in mitigation of the fine they might think proper to assess against him," is erroneous.

APPEAL from the Circuit Court of Marengo.
Tried before the Hon. WM. M. BROOKS.

THE prisoner in this case, Louis Rosenbaum, was indicted for an assault and battery on one Jacob Gittleman, "exhibiting at the time an awl as a weapon;" and on his trial, having pleaded not guilty, reserved the following exceptions to the rulings of the court :

"Jacob Gittleman, upon whom the alleged assault and battery charged in the indictment was committed, was introduced as a witness, and testified, that Rosenbaum, a few days before the day on which the difficulty between them occurred, bought from him a pair of shoes at $2,25, and, on the day of the fight, bought from him three *sash* at $2,50, making in all $4,75; that he paid him, on the day of the fight, $4,75 for said sash; that on the evening of the said day, just about supper-time, and after witness had quit work for the day, and was preparing to go to his supper, said Rosenbaum came into his shop, which was in the town of Demopolis, and told him there was a mistake

in the amount of money paid him—that he had paid him $1 more than he owed; that witness then insisted that defendant owed him $4,75, and endeavored to satisfy him of that fact; that the defendant told him 'not to come the Jew over him,' and cursed him, and committed an assault and battery on him by sticking a sharp instrument in him, the particulars of which he detailed to the jury. On cross examination, the defendant's counsel asked said witness, whether or not Rosenbaum paid the money for the sash, in the store of Taylor & Epps, on the day of the difficulty, and whether he did not admit that the amount due for said sash was $3,75. The solicitor for the State objected to this question, and the court sustained the objection; to which ruling of the court the defendant excepted.

"The defendant's counsel then asked said witness, whether, at the time of the payment of said money in said store, and in the presence of said Epps, the defendant did not say to Epps, 'I want you to loan me $3,75, I owe this man (Gittleman) $3,75 for some sash, and I want to pay him.' To this question, also, the solicitor objected, and the court sustained the objection; to which ruling the defendant excepted. The defendant's counsel then asked said witness, whether there was not a mistake in the payment of said money at said store, and if the defendant did not then say that he wanted to pay him only $3,75, and if he did not know that the defendant paid him $4,75 by mistake. To this question, also, the court sustained an objection on the part of the solicitor, and would not allow the same to be asked; and to this ruling of the court the defendant excepted. The court then stated, that no evidence of anything that was said or done at the store of Taylor & Epps would be allowed, (it being, *prima facie*, inadmissible,) unless testimony was adduced to the court showing its relevancy; and the defendant thereupon ceased to offer further evidence in reference to said occurrence.

"The defendant's counsel then asked leave of the court to state with what view said evidence was offered, and to state other circumstances, which the defendant expected

to prove in connection with such facts, to show the relevancy and admissibility of such evidence; but the court refused to allow counsel to make any statement in reference to said matters,—stating at the time, that the supreme court had intimated such practice to be pernicious—that it was well known that, in such instances, counsel were often mistaken, and made statements which they afterwards failed to prove; that he concurred with the supreme court, and would not allow counsel to make any statement of facts and circumstances which they expected to prove; that when testimony, *prima facie* inadmissible, was offered, the proper course was to introduce other testimony to show its admissibility, since otherwise inadmissible testimony would frequently get before the jury, and its subsequent exclusion could not always remove the impression it may have produced. To this ruling of the court, also, the defendant excepted.

"In the further progress of the trial, the solicitor offered in evidence the answers of Dr. Ruffin to the direct interrogatories propounded to him in a civil suit between the same parties for damages for the same injury; and, in order to authorize the introduction of said evidence, read in evidence the following agreement between the counsel for the prosecution and defense:

"The State   ⎱  In the circuit court of Marengo.
     *vs.*   ⎰ It is consented and agreed, that the Louis Rosenbaum. ⎰ deposition of Dr. James S. Ruffin, taken in the civil suit of Gittleman v. Rosenbaum in this court, may be used and read in evidence in this case of State v. Rosenbaum, and the personal attendance of said Ruffin is dispensed [with;] and also in the State v. Gittleman.

            LOMAX & PRINCE, for Rosenbaum,
            McCAA & CLARKE, for Gittleman,
            Y. L. ROYSTON, solicitor."

"The defendant, by his counsel, objected to the introduction of the answers of said Ruffin as evidence on this trial; but the court overruled the objection, and allowed the said answers to go as evidence before the jury; to which ruling the defendant excepted."

Dr. Ruffin's answers to these interrogatories were as follows: "I am a physician, and am acquainted with the parties to this cause. I saw Gittleman on or about the 1st February, 1857. He was wounded in the hand, and on the side. The wound in the hand was a penetrating wound; that is, one made by a sharp-pointed instrument. I did not examine the wound in the side. The wound in the hand was a very serious one. The instrument went into the palm of the hand, passing obliquely nearly through towards the wrist; thereby being more serious than if it had passed right through his hand, since it thus injured the tissues and ligaments of the hand. The back of the hand became very much swollen and inflamed, preventing him from using his fingers, and resisting all treatment until an exfoliation of the bone took place; and the wound then healed up slowly, and the hand returned to its normal condition. The wound must have been made with a sharp-pointed instrument, at least two or two and a half inches long, as the wound was of that length. A wound made by an awl, or three-cornered dirk, is more painful and dangerous than one made by a knife. The wound in Gittleman's hand was made by a small, sharp instrument of some kind; I do not know whether it was three-cornered or not. The last time I prescribed for him was on the 15th March, 1857. The wound incapacitated him from carrying on his trade as a mechanic. He was not well when I saw him on the 15th March, and had not then use enough of his hand to go to work. I never saw him threatened with any symptoms of tetanus, and could not say that there was any probability of his losing his hand. I charged him $50 for our services; that is, the firm of Ashe & Ruffin. I was not the only physician summoned."

. The State having here closed, the defendant offered one Epps, of the firm of Taylor & Epps, as a witness, and proposed to ask him the several questions, in reference to what occurred between the parties at said store, which had been previously propounded to Gittleman on cross examination; but the court, on motion of the solicitor, would not allow any of the questions to be answered,—

" stating, that the transaction at the store of Taylor & Epps had nothing to do with the fight at the shop of Gittleman, and that no evidence in relation to said transaction would be allowed to go before the jury, unless the counsel would show its relevancy by other testimony;" to which several rulings of the court the defendant excepted.

" Gittleman, the State's witness, stated during his examination, that the defendant struck him twice, about an inch above the hip, with an awl, or other sharp instrument, and inflicted two wounds, about three-quarters of an inch deep, in his side; that his side swelled up in consequence of these wounds; that he struck Rosenbaum, during the fight, three or four times with a hammer, once on his arm, and also on his head. No witness but Gittleman was offered to prove the fight; his evidence, with Dr. Ruffin's answers to the interrogatories, being the only evidence offered by the State. No evidence was offered, except the deposition of Dr. Ruffin, to show what physicians meant by the word *examine*, or that it had, when used by a physician, a different meaning from its ordinary acceptation as used by other persons. One Jones, a witness for the defendant, testified, that he saw the defendant the evening after the fight was over; that he was the bloodiest man he ever saw; and that he had either seven or nine wounds on his head, five of which were severe, being about an inch in length, and [cut] to the skull-bone, and having the appearance of having been made with a hammer. Many witnesses for the defendant testified to his good character as a peaceable, quiet, and orderly citizen. There was evidence, also, tending to show that the defendant was a saddler by trade, and was in the habit, when out of his shop, of carrying an awl about with him; and that he was moving his shop on the day of the fight, and had his pockets filled with all sorts of little things that he could get into them."

" The court charged the jury, among other things,—

" 1. That they could consider what Dr. Ruffin meant, when he said that he did not *examine* the wounds in said Gittleman's side—whether he meant that he did not

examine them as a physician, or that he did not see or look at them at all.

"2. That, ordinarily, the weight to be given to good character was different in different cases—that in some cases it was entitled to great weight, and in others not to so much; that in a case of larceny, evidence of good character might, under some circumstances, entirely rebut the idea of guilt.

"3. That they could, in arriving at a correct verdict, consult their general knowledge and their own experience in life.

"4. The court, after alluding to several points relied on by the defendant's counsel as showing contradictions of the witness Gittleman, (which one of said counsel had characterized, in his argument to the jury, as '*little matters*,') and commenting thereon, observed to the jury, that they could give such weight to these '*little matters*' as they saw fit.

"5. That the evidence of good character went only to the question of the defendant's guilt, and, if they found the defendant guilty, should not be regarded by them in mitigation of the fine which they might think proper to assess against him."

The defendant having excepted to each of these charges, and a controversy having arisen in reference to the sufficiency of the exceptions, "the court then said, in the presence and hearing of the jury, the defendant, and his counsel, that the court had no recollection of using the words '*little matters*' in the charge to the jury; that if the phrase had been used, it was simply intended to call the attention of the jury, in general terms, to the matters referred to by the defendant's counsel in their argument; and that it was far from the intention of the court to characterize them as small or insignificant, or to intimate in what light they were to be considered and weighed by the jury."

I. W. GARROTT, with LOMAX & PRINCE, for the prisoner.
M. A. BALDWIN, Attorney-General, *contra*.

STONE, J.—We concur with the circuit court in holding, that what took place at the store of Taylor & Epps, in the forenoon of the day on which the fight took place, was not admissible in evidence. It was no part of the *res gestœ*—was too far removed in point of time from the actual engagement; and the only effect it could have had, would have been to embarrass the jury with considerations of the merits of the quarrel. It could not qualify or mitigate the *breach of the peace* of which the public complained. Ward v. The State, 28 Ala. 53; 1 Greenl. Ev. § 52; Robbins v. The State, 20 Ala. 36.

[2.] Neither was it permissible to interrogate the witness as to the immaterial matter which had previously taken place at the store of Taylor & Epps, and thereby lay a predicate for contradicting him. To justify this mode of attack upon the credibility of a witness, the matter inquired of must be pertinent to the issue.—1 Greenl. Ev. § 449.

A deposition, taken in a civil suit between the defendant and the person on whom the assault is charged to have been committed, was offered in evidence for the prosecution, and objected to by the defendant; the deposition was admitted, and the defendant excepted. To legalize this piece of testimony, the prosecution read in evidence the following agreement:

"The State *vs.* Louis Rosenbaum. } In the circuit court of Marengo. It is consented and agreed, that the deposition of Dr. James S. Ruffin, taken in the civil suit of Gittleman v. Rosenbaum in this court, may be used and read in evidence in this case of State v. Rosenbaum, and the personal attendance of said Ruffin is dispensed [with;] and also in the State v. Gittleman.

LOMAX & PRINCE, for Rosenbaum,
McCAA & CLARKE, for Gittleman,
Y. L. ROYSTON, solicitor."

It is contended for plaintiff in error, that the record does not show that Lomax & Prince, at the time they entered into said agreement, were the attorneys of Rosenbaum. Wagstaff v. Wilson, 4 Barn. & Ad. 359, is relied on in

support of this position. We need not, and do not, now determine whether the principle invoked would govern this case, if the question stood alone on the argument copied above.—See Marshall v. Cliff, 4 Camp. 133; Roberts v. Lady Gresley, 3 Car. & P. 380. The question does not rest alone on the agreement. In the bill of exceptions, and immediately preceding the said agreement, is the following language: "In order to authorize the introduction of said evidence, the solicitor for the State read in evidence the following agreement between *the counsel for the prosecution and defense.*" The record, then, recites that Messrs. Lomax & Prince were of counsel for the defendant Rosenbaum; and the agreement being without date, we do not feel at liberty to infer that it was signed when they had no authority to bind the defendant. On the contrary, we think it sufficiently apparent from the record that Lomax & Prince were his attorneys at the time they entered into the agreement.

[3.] Having attained the conclusion announced above, we think that well settled principles of law, as well as sound policy, require us to give to an agreement of counsel, as to the conduct of trials in court, the same binding efficacy as if the agreement had been made by the party. To hold otherwise, would greatly embarrass judicial proceedings.—Albertson, Douglas & Co. v. Goldsby, 28 Ala. 711, and authorities cited; Riddle v. Hanna, 25 Ala. 484; Starke v. Kenan, 11 Ala. 818; Coke v. Nicholls, 2 Yeates, 546; Greenville v. McDowell, 4 Iredell's Equity, 481; Kent v. Ricards, 2 Md. Ch. Decis. 392; 1 Bishop's Crim. Law, § 672.

True, where admissions or agreements are made improvidently, or through mistake, the court may relieve against them by means of its coercive power over its own officers, and may set them aside upon such terms as will meet the justice of the particular case.—Harvey v. Thorpe, 28 Ala. 250. In this case, no motion was made by defendant to obtain relief from the agreement. The testimony was objected to on general grounds; and, as we infer from the bill of exceptions, this objection was made after the trial had been entered upon. If the court had

sustained the objection at that stage of the proceedings, the result would probably have been to deprive the State of Dr. Ruffin's testimony altogether, unless the doctor had chanced to be in attendance on the court.

[4.] If it be contended, that the ruling of the court denied to the accused his constitutional right to be *confronted by the witnesses against him*, we answer that this, like many other constitutional privileges, may be waived by the defendant, in such a case as this. All the admissions of facts, or that certain witnesses, if present, would prove certain facts, made by defendants for the purpose of a trial, rest on this principle. We have been referred to no case which sustains this view.—See The King v. Morphew, 2 Maule & Selwin, 602; Roscoe's Cr. Ev. 78.

[5.] We can perceive no error in the first charge given. The jury are always judges of the meaning of language employed by witnesses. The context generally, and frequently the profession or occupation of the witnesses, should be regarded in arriving at the sense in which words are employed. Dr. Ruffin testified as to the wound in the hand, in such manner as to show he had given it a professional examination. Immediately afterwards, and in the same connection, he stated he did not examine the wound in the side. Yet he had testified, that Gittleman was wounded both in the hand and in the side. If he had not seen the wound in the side, he could not properly have testified there was such wound. We think the sense in which he employed the word *examine*, was a proper subject of inquiry for the jury.

[6.] There is nothing in the third charge for which we feel authorized to reverse. The plainest recital of everyday transactions would frequently, if not universally, be unintelligible to us, if we were not aided in the investigation by our general knowledge and experience. These are the lights by which we determine the probability or improbability of testimony, the truthfulness of witnesses, and the reasonable consequences of particular acts.—Ogletree v. State, 29 Ala. 693.

[7.] The remark of the circuit judge, characterizing certain matters relied on for the defense as " little mat-

ters," was fully explained and neutralized in the hearing of the jury, and before their retirement. This furnishes no cause of reversal.

[8.] Under our statutes, the jury assess the fine, in most or all cases of misdemeanor. This being the case, it follows that all evidence in mitigation, as well as evidence on the question of guilt, must go before the jury, and be considered and passed on by them.—See Robbins v. The State, 20 Ala. 36. The rule is different where the jury have nothing to do with the *degree* of guilt, but only pronounce on the single question of guilty *vel non*.—See The King v. Lynn, 2 Term Rep. 733; King v. Sharpness, 1 T. R. 227; Rex v. Turner, 1 Str. 139; Rex v. Cox, 4 C. & P. 538; King v. Withers, 3 T. R. 428; King v. Ellis, 6 B. & Cress. 145; People v. Cochran, 2 Johns. Cas. 73; State v. Smith & Cameron, 2 Bay, So. Ca. 62.

It was settled in the case of Felix v. The State, 18 Ala. 720, that evidence of previous good character was proper for the consideration of the jury, not only when a doubt exists upon the other proof, but even to generate a doubt as to the guilt of the accused.—See, also, Wh. Am. Crim. Law, § 643–4. The effect of this decision is to declare that, in criminal prosecutions, good character is original evidence for the accused, independent of the character of the other evidence which may be given in the cause. It is, then, evidence to be weighed by the jury in determining the *question* of guilt, and the *degree* of the defendant's criminality. In prosecutions for offenses which consist of different degrees, as declared and defined by law, no one, we apprehend, would hesitate to declare that, under the principle settled in the case of Felix, *supra*, good character should be weighed by the jury in determining the degree of guilt. Now, although few if any misdemeanors have legally defined degrees, most of them are in fact classified by the measure of criminality which attends them. Some assaults are more violent and aggravated than others; and yet the law, in the absence of some specified and particular circumstances and intents, has not declared any degrees in assault, or assault and battery. The jury, in pronounc-

ing upon the question of guilt, can render only a general verdict of guilty or not guilty.

In assessing the fine, however, the jury are not thus shackled.—Code, § 3307. They are clothed with a large discretion, which must have had for its object the accommodation of the punishment to the degree of criminality. In fact, the fine assessed in the particular case is but a reflection of the opinion of the jury on the guiltiness of the accused.

We hold, then, that the jury should have been instructed to regard the evidence of defendant's good character in determining the degree of the defendant's guilt; and as the *degree* of guilt can only find expression in the *amount* of fine assessed, the fifth charge given by the court is erroneous.

Lest this opinion may mislead, we will add, that whenever the grade or degree of guilt of an offender is ascertained by the jury, good character has then accomplished its entire object. We can perceive no reason why one of good character should be punished more lightly, than another who is not able to prove a good character, but who, in the opinion of the jury, is no more guilty than the former. There may exist in the one case as strong reasons for wholesome restraint and salutary public example, as in the other. The amount of the fine, however, is in the main left to the discretion of the jury; and we do not wish to be understood as placing restraints on the exercise of that discretion, to a greater extent than the statute has done. We, as a revising court, cannot in any given case assert, as matter of law, that the jury have exceeded or fallen short of their duty.

For the error above pointed out, the judgment of the circuit court is reversed, and the cause remanded.