## Abraham Kaufman et al.
### v.
## Otto Schneider, Assignee.

*Insolvency—Judgments by Confession—Motion to Set Aside—Assign- ment—Preference—Res* Adjudicata—*Appeal—Motions—Notes—Escrow— Deliveries.*

1.  Equity will not interfere in behalf of the maker of a judgment note, founded upon a sufficient consideration, where judgment is taken thereon, without jurisdiction of such maker.

2.  A ruling upon a motion, which is final, is appealable, and the same may be interposed as an estoppel, no appeal having been taken, when the matters decided are again sought to be made the subject of controversy.

3.  This court holds, in proceedings touching the assignment of an insolvent firm, a judgment by confession having been entered upon certain judgment notes previously given by it on the day a voluntary assignment was made by such firm, though at an earlier hour, that the decree of the County Court setting forth, among other things, that such judgment and the execution thereon amounted to an unlawful preference, can not stand, and directs that said execution creditors be allowed priority of payment out of the goods levied upon.

[Opinion filed January 22, 1890.]

Appeal from the County Court of Cook County; the Hon. Richard Prendergast, Judge, presiding.

Messrs. Quigg & Bentley, for appellants.

From the recent cases decided by the Supreme Court of our State, we extract the following rule : If the preferential act of the debtor is done at a time when he has his mind made up to assign, or at a time when he " is busied solely with a consideration of the disposition to be made of his assets in view of the impending and inevitable catastrophe," then the preference is void. The quotation above is from the opinion of the court in the case of Hide and Leather National Bank v. Rehm, 126 Ill. R. p. 461. In that case it appeared that the notes which were held to constitute the preference

were given in the afternoon of one day, and the assignment was recorded at twenty-five minutes past nine in the morning of the next day. The insolvent pretended that he did not make up his mind to assign until the morning of the day the assignment was made, but the court decided that it would not, where the two acts were so nearly simultaneous, attempt to discriminate the exact point of time when the debtor resolved to assign; that it was sufficient that he was busied solely with a consideration of the disposition to be made of his assets in view of the impending and inevitable catastrophe.

Messrs. Page, Eliel & Rosenthal, and Kraus, Mayer & Stein, for appellees.

The power of a partner to bind his firm by a confession of judgment has been denied in the following cases: Girard v. Basse, 1 Dall. 119; Sloo v. State Bank of Ill., 1 Scam. 428; Barlow v. Reno, 1 Blackf. 252; Grafebrook v. McCreedie, 9 Wend. 437; Crane v. French, 1 Wend. 311; 1 Am. Leading Cases, 452; York's Appeal, 36 Pa. St. 458; Bitzer v. Shunk, 1 Watts & S. 340; Shed v. Bank, 32 Vt. 709; Christy v. Shennan, 10 Ia. 535; Edwards v. Pitzer, 12 Ia. 607; North v. Mudge, 13 Ia. 496; Remington v. Cummings, 5 Wis. 138; Everson v. Gehrman, 1 Abb. Pr. 167; St. John v. Holmes, 20 Wend. 609; Lambert v. Converse, 22 How. Pr. 265; Clark v. Barven, 22 How. 270; and we believe the rule there laid down to be good law.

Whether the signing partner disappears or not, his copartners may sell the entire stock of the firm to pay its debts in good faith; and they may either divide the proceeds of the sale *pro rata* among all their creditors, or they may exclude the payee in the note from any share in the distribution of them. Schneider v. Sanson, 62 Texas, 201; Graser v. Shellwagen, 25 N. Y. 315; Williams v. Barnett, 10 Kan. 455; Halstead v. Shepard, 23 Ala. 558; Cayton v. Hardy, 27 Mo. 536; Arnold v. Brown, 24 Pick. 89; Lamb v. Durant, 12 Mass. 54.

Or they may in good faith convey all of the firm's property to one creditor in satisfaction, of their indebtedness to him, thus securing to him a preference over the holder of the note.

Or, again, they may at once file a bill for the dissolution of the partnership and the appointment of a receiver, and procure the delivery of all of the firm's assets to an officer of court.

Appellants assert that "a judgment confessed in favor of a firm creditor by one partner, without the knowledge of the other, even if not sustainable as against the individual estate of the other, ought to be upheld as a lien on partnership assets;" and in support of their position they quote the greater portion of the opinion of the Supreme Court of Pennsylvania in the case of Grier & Co. v. Hood, 25 Pa. St. R. 430. We shall take the liberty of printing that portion of this opinion which they have omitted. The "etc.," are as follows: "Thus, in Morse v. Bellas, 7 New Hampshire, 549, it was held that one partner could, by deed, bar his copartner of a joint right, and that he might individually adjust, receive payment of, or release any partnership debts; and in Wills v. Evans, 20 Wend. 251, an authority under seal, given by one partner to a third person to discharge a firm debt, was held to be good. So, in Toply v. Butterfield, 1 Met. 515, the rule was held not to apply where one partner conveyed, by deed, property of a firm which he might have conveyed without deed; and in Russit v. Strong, 5 Hill, 163, an assignment, under seal, of a chose in action belonging to a firm by one member, was held to be good. These exceptions and many others of the same general character, which might be adduced, prove that the rule was not intended to prevent the use by an individual member of the firm property for partnership purposes, but to prohibit partnership effects from being misapplied, and also to protect the persons and separate estates of the partners from being bound by acts not contemplated by the articles of copartnership."

Even if we were to admit that the design of making a formal assignment did not suggest itself to the mind of Sues until the afternoon of November 27th (as appellants would have us believe), "all that was done" will "be viewed as parts of the same transaction, so as to make it immaterial whether the determination to make the assignment, in fact, preceded or

followed the execution of the judgment notes." Hide & Leather Nat'l Bank v. Rehm, 126 Ill. 461.

A consideration of the case of Hanford Oil Co. v. First National Bank, 126 Ill. 584, will lead to the same conclusion. It is there held that "when the debtor enters upon a course of conduct, having for its object the disposition of all his estate for the benefit of creditors, and as a part of the plan by which to effect that object, executes a general assignment, the distribution must be to his creditors in proportion to the amounts of their respective claims."

Admitting that the assignment in the case at bar was not determined upon until the last moment, and that at one time during the formative period of the insolvent's resolutions a conditional bill of sale was the plan of disposition favored, and at another time the execution of judgment notes, the fact remains that the thing actually done was the filing of an assignment deed, and therefore the insolvent estate must be distributed without priority or preference. The notes were certainly not given until the debtors had entered upon a course of conduct having the disposition of all their estate in view.

Appellants have attempted to show that the case at bar comes within the decision of the Supreme Court in Field v. Goehegan, 125 Ill. 68. The petition in that case did not charge any contemplated assignment at the time of the execution of the notes, but alleges that the deed of assignment was withheld by the insolvents pursuant to a certain understanding between them and the judgment creditors, etc., etc. It was held that, " Had the warrants of attorney under which the defendant in error obtained priority been executed after the debtors contemplated an assignment, and on the eve of an assignment, then they might be regarded as part of the assignment, and obnoxious to the law." In the case of Hide & Leather National Bank v. Rehm, *supra*, the Supreme Court has announced a broader doctrine; but for the determination of the Field case the more restricted rule was quite sufficient. The evidence there shows that the liens in dispute had been obtained through the diligence of the holders of the judgment

notes, and it was not claimed that the notes were executed after the insolvents had entered upon the disposition of their estate with a view to an inevitable failure. The matter in controversy was entirely different from that disputed in the case at bar, and hardly touches it at any point. We claim that the circumstances of the case before us were of such a nature that it makes no difference at what precise point of time, between the 14th and 27th of November, insolvents determined to assign, and that any reasoning based upon the fundamental fact that the intention of assigning was actually formed after the execution of the judgment notes, is not appropriate to this case; and we contend, further, that the advantage which Kaufman Bros. & Co. gained was not due to the diligence of Lachenbruch, but to the act of Furthmann, the attorney for Sues & Uhlendorf, who, knowing his clients' resolution to assign, placed the notes in the hands of Lachenbruch, and admonished him to make haste and get another lawyer.

GARNETT, J.   In October, 1888, Sues & Uhlendorf were indebted to Kaufman Bros. & Co., appellants, in the sum of $12,000 or $15,000.   The creditors became uneasy about their claim, and for some months before that time had been urging Sues & Uhlendorf to give them security.   In response thereto promissory notes were made with warrants of attorney to confess judgments thereon.   The notes and warrants were executed about October 15th by Sues alone, but with the approval and consent of Uhlendorf; were payable four months after date to Kaufman Bros. & Co., and were left in the possession of Edmund Furthmann, to be by him held subject to the order of the makers.   Kaufman Bros. & Co. being dissatisfied with the situation, one of the firm, Lachenbruch, visited Chicago about November 15, 1888, when, upon application to Sues for better security, the notes first executed were surrendered to Sues, and he then executed in the firm name of Sues & Uhlendorf, new notes with warrants of attorney to confess judgments.   The new notes were payable on demand to the order of Kaufman Bros. & Co., and for the

same amounts as the notes executed in October. On November 27th judgment by confession in the Superior Court was entered on the notes last executed in favor of the payees and against the makers; execution was immediately issued on the judgment and levied on the stock of goods belonging to Sues & Uhlendorf. Afterward, and on the same day, they made a voluntary assignment for the benefit of their creditors, which was then duly filed and recorded. On November 28th the County Court ordered the sheriff to deliver to the assignee of the insolvents the property levied upon, reserving to the court the right to determine the validity of the execution lien upon the same and the proceeds thereof. On the same day Uhlendorf made a motion in the Superior Court to set aside the judgment on the grounds, first, that the note was not signed by him. Second, that the note was not signed by his authority. Third, that the warrant of attorney was, as to him, wholly unauthorized. Fourth, that the judgment was without his consent or authority; but the motion was overruled. On petition of one Hier, a creditor of the insolvents, the court, on March 11, 1889, entered a decree finding that Sues had no authority from Uhlendorf to execute the judgment notes; that the same were left in escrow in possession of Furthmann, until he should be directed by Sues & Uhlendorf to deliver them to appellants; that Furthmann, without any authority to do so, delivered them to appellants on November 27, 1888, after Sues & Uhlendorf had determined to execute a voluntary assignment for the benefit of their creditors, and after appellants were informed of such determination; that such judgment and execution were an unlawful preference, and it was ordered that they be treated as void so far as they were sought to be made the basis of such preferences. Appellants now pray for the reversal of that decree.

The effect of the judgment as to Uhlendorf must first be ascertained. If the judgment is void as to him, the ruling of the County Court may be conceded to be unassailable. There is no denial of the fact that the notes were founded on a sufficient consideration. The insolvents legally and equitably owed the money to appellants. The law in this State seems

to be, in such cases, that if a judgment is taken on the claim in favor of the creditors, without jurisdiction of the debtor, equity will not interfere in favor of the latter. The court so decided in Colson v. Leitch, 110 Ill. 504; and in Martin v. Judd, 60 Ill. 78, it was held, that where an attorney had appeared, without authority from the defendant, and a judgment was entered, by means of which redemption was effected from a sale of real estate under a prior execution, the purchaser under such prior execution was not in a position to challenge the authority of the attorney who entered the defendant's appearance in the second suit.

There is, however, still another reason why the judgment is conclusive as to Uhlendorf. The points now raised against the judgment are *res adjudicata*. They are identical with the points of this motion to set aside the judgment in the Superior Court. The court then had jurisdiction of the parties and the subject-matter. The ruling on the motion was final and an appeal might have been taken therefrom. That the adjudication is upon a motion instead of the original merits of the case makes no difference in this respect, when the very matters decided are again sought to be made the subject of controversy. If the decision on a motion is final, affects a substantial right, "and may be reviewed or corrected on appeal, and the complaining party acquiesces, we see no reason why the decision should not be as conclusive of the matters decided, as the determination of the action itself would be of the whole controversy." Sanderson v. Daily, 83 N. C. 67.

The same question has been considered in various cases with the same result, substantially, as in the North Carolina case. See Dwight v. St. John, 25 N. Y. 203; Fruenkenthal's Appeal, 100 Pa. St. 290; Austin v. Walker, 61 Iowa, 158; Commissioners v. McIntosh, 30 Kas. 234; Langdon v. Raiford, 20 Ala. 532; Grier v. Jones, 54 Ga. 154; Herman on Estoppel, Sec. 472.

We must, then, consider the judgment final and not open to attack, unless it was an unlawful preference.

Here again the conclusive character of the judgment is material. Rightful delivery of the notes to appellants is one

Kaufman et al. v. Schneider.

of the facts which the judgment determined. But it does not fix the date of the delivery. It appears very clearly from the evidence that when the new notes were given, Lachenbruch was insisting upon more satisfactory security than his firm then possessed, and it was certainly the intention of all parties to satisfy him on that point. If the notes were delivered to Furthmann in escrow, to be held by him until directed by Sues & Uhlendorf to hand them to appellants, we are at a loss to perceive how their security was improved by the new arrangement. They were still in the power of their debtors, and really without any security. The only witness whose evidence gives any support to appellee's contention on this branch of the case is Sues. The evidence of Katz is of no moment, as he makes no pretense to knowledge of anything on the subject, except what Sues told him. The force of Sues' evidence given on this hearing is much impaired by the fact that immediately after the assignment he was called upon to testify, and stated on oath that he did not remember that the second notes were given in escrow, but that he gave them to Furthmann to do what he thought best with them. Katz testified that he was present when the new notes were made, and Sues then said nothing about holding the notes in escrow. Furthmann testified that the notes were made without any condition whatever; that the old notes were delivered up to Sues, and at the same time he showed the new notes to Lachenbruch, who examined and returned them to Furthmann, and said, "I want you to hold these notes for me." Furthmann did keep the notes for appellants until November 27th, when he handed them to Lachenbruch. As to these facts Furthmann is corroborated by Lachenbruch. Moreover, there is no evidence that Furthmann was authorized after November 15th to make a delivery of the notes; all the evidence given shows that if there was any delivery, it must have taken place on November 15th, and as we have seen, the judgment is conclusive that there was a delivery at some time.

The security required by appellants was the result of their own vigilance and the pressure they exerted against their debtors. It was not voluntarily offered to them by the

debtors as incident to a determination to dispose of all their property for the benefit of their creditors. It is very doubtful whether either of the insolvents ever determined to make an assignment or other disposition of all their property for the benefit of their creditors prior to November 27th. From Sues' own evidence it appears that he did not intend to make an assignment when he executed the notes on November 15th. The most unfavorable statement he makes on the subject as to appellants, is that he may have been thinking of an assignment for three days before it was actually made. The business of the insolvents was continued as usual after November 15th, and until November 27th, and on the very day the assignment was made Sues tried to borrow from appellants for his firm, $700 additional, to aid them in carrying on their business. The refusal of that request was probably the proximate cause of the assignment, but the facts are far from pointing to any determination of the debtors, as early as November 15, 1888, to yield the dominion of their property for the benefit of their creditors. We think the case of Field v. Geohegan, 125 Ill. 68, answers the charge of unlawful preference now made against appellants' right to a lien under their execution.

The decree is reversed and the cause remanded with directions to the County Court to enter an order allowing the execution of Kaufman Bros. & Co., priority out of the proceeds of the goods levied on.

*Reversed and remanded with directions.*